The Louisville, New Albany and Chicago Railway Company v. Wright.

No. 11,891.

## THE LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY v. WRIGHT.

RAILROAD.—*Negligence.*—*Overhead Bridges.*—*Brakeman.*—One entering the service of a railroad company as brakeman has the right to assume that the company has constructed and maintained its roadway and bridges in such a manner that he can perform his duties with reasonable safety, and that if there is a low bridge or any such danger to be encountered in the service, he will be warned of it.

SAME.—*Duty of Master to Inform Employee of Unusual Risk.*—Where there are dangers and hazards known to the master, or of which he ought to have knowledge by the use of ordinary care, and which are not ordinarily and usually incident to the business, it is his duty to inform the employee of such danger when hiring him, unless the danger is so apparent that the latter will be bound to take notice of it.

SAME.—*Assumption of Risk by Brakeman.*—*Unusual Dangers.*—A person contracting to work upon a railroad as brakeman assumes the risks ordinarily and properly incident to such service, but he does not assume the risk of unusual dangers, such as result from low overhead bridges, of the perilous character of which he has no knowledge, or of which he is not bound to take notice.

SAME.—*Negligence to Maintain Low Bridge.*—A railroad company which constructs and maintains a bridge over its track so low that a brakeman can not, while his train is passing thereunder, walk or stand upon the cars, or even apply the brakes, without injury, is guilty of negligence, and liable to one who, having no knowledge of the peril, is injured while in the discharge of his duty.

SAME.—*Maintenance of Low Bridges by Other Railroads.*—*Evidence.*—In such a case, evidence that there are bridges on all railroads in the United States too low for brakemen, standing or walking upon ordinary boxcars, to pass under with safety, is not competent.

SAME.—*Evidence of Injury to Other Persons.*—*Notice to Company of Dangerous Character of Bridge.*—Evidence that other persons were previously injured by coming in contact with the bridge, while passing thereunder upon moving trains, is competent as showing notice on the part of the railroad company that the bridge was dangerous.

EVIDENCE.—*Offer of Compromise.*—*Admissions.*—A letter written by a plaintiff, prior to the commencement of his action, and containing admissions made simply to open the way to a compromise, or as a part of an attempted compromise, is not admissible against him.

The Louisville, New Albany and Chicago Railway Company *v.* Wright.

SAME.—*Physician.*—*Opinion as to Probable Effect of Injuries.*—It is competent for an attending physician, after stating the character and condition of the injuries sued for, to give his opinion as to the probable results of such injuries, although he did not continuously attend the injured person to the time of the trial, and it is also competent to embody the facts stated by him in a hypothetical question put to another physician.

INSTRUCTIONS TO JURY.—*Overhead Bridge.*—*Negligence.*—*Practice.*—For a consideration of instructions touching the principles involved in an action for injuries caused by an overhead bridge, and also for a statement of rules of practice relating to the bringing of instructions into the record and their consideration on appeal, see opinion.

BILL OF EXCEPTIONS.—*Practice.*—A bill of exceptions may properly be in the record, although the rendition of the judgment and the approval of an appeal bond intervene between the overruling of the motion for a new trial and the giving of time within which to file the bill.

From the Jasper Circuit Court.

*W. F. Stillwell, G. W. Friedley* and *G. W. Easley,* for appellant.

*W. P. Adkinson, M. F. Chilcote, J. P. Wright* and *E. P. Hammond,* for appellee.

ZOLLARS, J.—It is charged in the complaint that near Putnamville the track of the railroad is laid in a deep cut over which is a bridge upon a public highway; that the railroad company negligently constructed, and has negligently maintained, the bridge so low as not to afford sufficient space to allow brakemen walking or standing upon freight cars in the discharge of their duty in the management of trains to pass under it with safety; that the railway company could, and should, have so constructed the bridge that brakemen could thus pass under it in safety ; that it had full knowledge that the bridge was dangerous to its brakemen operating its trains; that it negligently failed to place upon or about the bridge lights or other danger signals in common use with well managed railways, to warn brakemen of the danger.

It is further alleged that on, and for a short time prior to, January 13th, 1882, appellee was engaged in the service of the railway company as a brakeman upon a freight train

which passed back and forth over the road, under the bridge, and that with full knowledge of the dangerous condition of the bridge, the railway company negligently failed to notify him of the danger ; that when the train upon which he was engaged as a brakeman was approaching the bridge at about 3 o'clock A. M. of January 13th, 1882, and when the rain was falling and a heavy fog and intense darkness covered everything, so that appellee could not see or determine what point the train was passing or approaching, and being unacquainted with that part of the railway, and not knowing that the train was approaching a dangerous bridge, appellee obeyed a call to brakes made by the engineer in charge of the engine and went upon the top of the cars to set the brakes, as it was his duty to do as such brakeman, and that while setting the brakes the train passed under the bridge, which, without any fault or negligence on his part, was brought in contact with the back part of his head with such force as to fracture his skull, thereby rendering him unconscious for weeks, causing him great suffering, both physical and mental, so as to impair his mind, causing paralysis of his right side, and thus rendering him a cripple for life, so that he is, and will continue to be, unable to make a living by manual or mental labor. The complaint closes with a general charge that all of the injuries were the result of negligence on the part of the railway company, and without negligence on the part of appellee.

A motion was made below for an order upon appellee to make the complaint more specific. The motion was overruled.

We have considered the arguments of counsel in support of the motion, but do not think that the matter is of sufficient importance to require more than a statement that, whether the ruling of the court below was right or wrong, no substantial injury could result to appellant.

The court below overruled a demurrer to the complaint, and also a motion by appellant for judgment in its favor

upon the answers of the jury to the interrogatories submitted by its counsel. Those rulings are assigned as errors. They may be considered together.

The substance of the answers of the jury to the interrogatories, so far as material, is as follows:

At the time of the injury to appellee, the railway company was maintaining, and for seven years prior thereto had maintained, an overhead bridge upon a highway crossing its track a short distance south of the town of Putnamville. The distance from the top of the rails upon the track to the bridge above was, and is, fifteen feet and nine inches. The box freight cars used by appellant were eleven feet high. Neither appellee nor any other full grown man could walk or stand erect upon the top of such box-cars passing upon the track under the bridge without coming in contact with it. The only way in which appellee could have passed under the bridge in safety, when upon the top of such box-cars, was to sit down, or stoop very low. He could neither sit down nor stoop low enough to escape danger, and at the same time apply the brakes. The railway company neither erected nor maintained any danger signals to warn brakemen of the approach to or nearness of the bridge. By reason of the lowness of the bridge, and the lack of danger signals, the service of a brakeman upon appellant's freight trains over that part of its road was a hazardous and dangerous service, and that fact and all other facts in relation to the bridge were known to the railway company before and at the time it employed appellee as a brakeman, and at the time he was injured. Previous to his employment upon appellant's road, appellee had had about one month's experience as a brakeman upon the Ohio and Mississippi Railroad. He was first employed by appellant on the 5th day of October, 1881, as a brakeman upon a freight train, his run being from New Albany to Greencastle, and continued in the service until the 4th day of November, 1881. That run carried him under the bridge in question. During that employment he

passed with his train under the bridge from eight to ten times in the daytime, and the same number of times in the night.   Subsequently, and on the 11th or 12th day of January, 1882, appellee was again employed by the railway company as a head brakeman to assist in operating freight trains, his run, as before, being from New Albany to Green-castle, and under the low bridge.   From his first employ-ment up to the time of his injury, he had passed under the bridge from seventeen to twenty times, one-half of the num-ber being in the night-time.   At no time previous to his injury did he know that the bridge was too low to allow him to pass under it with safety when standing or walking upon the box-cars in attending to the brakes.   He had no knowl-edge that the service was a hazardous one, by reason of the low bridge, and was not notified of that fact, nor of any fact as connected with the bridge, either by the railway company or any other person.   The jury further answered, that, prior to his injury, appellee did not have an opportunity to know that the bridge was too low to allow him to pass under it with safety when standing or walking upon the top of freight cars.   They also answered, that he made no effort to ascer-tain the height of the bridge, or whether or not he could with safety pass under it when upon the top of box-cars attending to the brakes.

They further answered that the danger of brakemen being struck by the bridge was an open and obvious one in the day-time, but not at night.   They still further answered, that, dur-ing the time appellee was in the employ of the railway com-pany, he could not, by an ordinarily careful use of the opportunities afforded him, have discovered that the bridge was so low as to be dangerous.

On the morning of the 13th day of January, 1882, when it was yet dark, appellee started with his train south from the Greencastle junction towards New Albany.   He knew that the first station south was Putnamville, and that the bridge in question was near to and south of the station, but he did

not know of the danger.   When within about one-third of a mile of Putnamville, the engineer, by the use of the steam whistle, called for the setting of brakes.   In obedience to that call, appellee went upon the top of the cars and moved from the front towards the rear end of the train, until he reached the brake.   The train was moving over a down-grade, and did not stop at Putnamville, but passed through and under the bridge some fifteen hundred feet south, the engineer not having shut off the steam soon enough to stop the train at the station.   As the train passed under the bridge, appellee being at the brake in a stooping posture, and his face towards the rear of the train, the bridge struck him upon the back of the head, about one and one-half inches from the top.

When called upon the top of the cars, appellee, because of the darkness, did not know what portion of the road the train was passing over.   When the train was passing through Putnamville he was not aware of the fact, and when injured did not know that the train was near the bridge.   After going upon the top of the cars he did not look in the direction in which the train was moving, and could not have seen the bridge had he looked, because of the darkness.   Appellee could not, by the use of ordinary care and diligence, have avoided the injury.

In support of the motion for judgment in favor of the railway company upon the above answers to the interrogatories, its counsel argue that, upon the facts disclosed, it must be presumed and concluded as a matter of law that appellee contracted with the company with reference to the hazardous nature of the service, and that, therefore, he can not recover.

The objections urged to the complaint, as we gather from the argument, are :

*First.*  That no facts are alleged showing that the railway company was under a duty to erect or maintain any other or different bridge from that in question ;

*Second.*  That no facts are averred showing that it was the

duty of the railway company to have warned appellee of the danger, because the danger was in its nature open and obvious;

*Third.* That it is not shown by the averments of the complaint that appellee's ignorance of the lowness of the bridge was not the result of want of ordinary care on his part;

*Fourth.* That no facts are averred showing that the bridge was not built in the usual and ordinary way, and of the usual and ordinary height; and,

*Fifth.* That it is not averred that appellee did not know that the bridge was dangerous by reason of being too low for a brakeman to pass safely under it when standing or walking upon the top of box-cars.

We think that the complaint sufficiently shows that appellee had no knowledge of the dangerous condition of the bridge. We think, too, that the complaint sufficiently shows that appellee's ignorance of the condition of the bridge was not the result of his own negligence. There is also a broad averment in the complaint that appellee received the injury without any negligence on his part. See *Town of Rushville* v. *Adams*, 107 Ind. 475, and cases there cited.

He was required to observe ordinary care for his own safety, but he was not required to go over the road upon a tour of inspection looking for defective bridges or faulty track before engaging in the service.

Because of its duty to him, appellee had the right to assume that the railway company had constructed and maintained its roadway and bridges in such a manner and condition that, as a brakeman upon its trains, he could perform his duties with reasonable safety, and that if there was any such danger to be encountered in the service as the low bridge, he would be warned of it.

In the case of *Boyce* v. *Fitzpatrick*, 80 Ind. 526, 529, in commenting upon cases cited, it was said: "These cases show that, while a servant assumes the risk, more or less hazardous, of the service in which he engages, he has a right to

assume that all reasonable attention will be given by his employer to his safety, and that he shall not be carelessly and needlessly exposed to risks, which might be avoided by ordinary care and precaution on the part of his employer." See, also, *Rogers* v. *Overton*, 87 Ind. 410 (413).

In the recent case of *Pittsburgh, etc., R. W. Co.* v. *Adams*, 105 Ind. 151 (161), this court said that, as a general rule, in the contract of hiring there is an implied undertaking upon the part of the master that he will use all reasonable care to furnish safe premises, machinery and appliances for the conducting of the business safely.

In the recent case of *Baltimore, etc., R. R., Co.* v. *Rowan*, 104 Ind. 88, 93, in speaking of low bridges, in a case in all essentials like that before us, and after citing the cases *pro* and *con*, it was said : " It seems to us that a railroad company is, and ought to be, required to construct and maintain its roadway and appendages, and its overhead structures, in such a manner and condition that its employee or servant can do and perform all the labors and duties required of him, with reasonable safety." See the cases there cited ; see, also, *Indiana Car Co.* v. *Parker*, 100 Ind. 181; *Umback* v. *Lake Shore, etc., R. W. Co.*, 83 Ind. 191; *Louisville, etc., R. R. Co.* v. *Orr*, 84 Ind. 50; *Atlas Engine Works* v. *Randall*, 100 Ind. 293 (50 Am. R. 798).

In the case of *Indianapolis, etc., R. R. Co.* v. *Love*, 10 Ind. 554, in speaking of the duty of the master to furnish a safe roadway, and to inform the servant of unusual dangers, it was said : " If a defect existed in the road which was known to the company, but which it was impossible for them to immediately remove or remedy, and in consequence thereof the road was unsafe but not impassable, and yet they should place an employee upon the road, and suffer him, in ignorance of said defect, to attempt to operate it, and injury should thereby result to him, certainly there would be a lia-

bility." See, also, *Thayer* v. *St. Louis, etc., R. R. Co.,* 22 Ind. 26.

In the case of *Baxter* v. *Roberts,* 44 Cal. 187 (13 Am. R. 160), it was said: " That one contracting to perform labor or render service thereby takes upon himself such risks and only such as are necessarily and usually incident to the employment, is well settled. Nor is there any doubt that if the employer have knowledge or information showing that the particular employment is from extraneous causes known to him hazardous or dangerous to a degree beyond that which it fairly imports or is understood by the employee to be, he is bound to inform the latter of the fact or put him in possession of such information; these general principles. of law are elementary and firmly established," etc.

The facts in the case of *Illinois Central R. R. Co.* v. *Welch,.* 52 Ill. 183, in brief, were these : The railroad track at Mendota was about eighteen inches from the edge of an awning,. which projected from the station-house, so that when a freight car stood upon the track the inside edge of the car was about even with the outer edge of the awning. The awning was about eighteen inches higher than the car. There being a signal for brakes, the plaintiff in the case, a brakeman, ran upon the ladder on the side of a car, and before reaching the roof was struck by the awning and injured. It was insisted in behalf of the railway company, that there could be no recovery, for the reason that the brakeman had assumed the risks incident to the service, and had an opportunity to know of the danger from the awning. In answer to that contention the court said: " There are many freight depots and station-houses upon the line of the Central Railway, and it would be preposterous in us to say, or to ask a jury to say, that a brakeman engaging in the service of the company must be held to know whether or not there may be one among them whose roof or awning so projects over the line of road that a brakeman on a freight train, in the performance of his duties, would be liable to be swept from the train by a col-

lision with it.   We held, in the *Chicago & N. W. R. R. Co.* v. *Swett,* 45 Ill. 201, that the corporation is bound to furnish to its servants safe materials and structures, and must, in the first instance, properly construct its road with all its necessary appurtenances.   This, of course, includes the obligation to keep in proper repair.   When the appellee entered the service of this company, he had a right to presume that it had, in these respects, discharged its obligations.  The ordinary perils of railroad life he of course assumed, and also any special dangers arising from the peculiar condition of the road so far as he knew of their existence.   *   *   *   But it would have been morally impossible for him to have ascertained the existence of all such special perils as this which caused the injury, and there is no reason for supposing that he had acquired such knowledge before the accident, as he had been but two months upon the road, and had always passed the station, where he was injured, in the night, except upon two trips.   Moreover, it is to be remarked that the danger was of such a character that it might well escape the observation of a person who had been even for a long time upon the road."

In Mr. Wood's work on Railway Law, vol. 3, at pages 1480–1, in speaking of low bridges, and the cases in which it was held that the railway company was not liable, it is said that the doctrine of those cases proceeds upon the ground that the servant knew of the hazard, and, therefore, assumed the risk incident to it, and that the master will be liable, where the circumstances are such that the servant can not be charged with such knowledge.

As it is the duty of the master to inform his servant of increased danger and hazard created by him in the change of machinery or premises, unless the servant has notice, or the change and increased danger are so apparent that he ought to take notice, so, where there are dangers and hazards known to the master, or of which he ought to have knowledge by the use of ordinary care, and which are not ordinarily and

usually incident to the business, he should inform the servant of such danger when hiring him, unless the danger is so apparent that the servant will be bound to take notice of it. *Hawkins* v. *Johnson*, 105 Ind. 29, 35 (55 Am. R. 169); *Pittsburgh, etc., R. W. Co.* v. *Adams*, 105 Ind. 151 (165); *Bradbury* v. *Goodwin*, 108 Ind. 286.

A person contracting to work upon a railway as a brakeman, assumes the risks ordinarily and properly incident to such service, but he does not, by such hiring, assume the risk of unusual dangers of which he has no knowledge, or of which he is not bound to take notice.

It can not be said here that, by the contract of hiring, appellee assumed the risk of injury from the bridge by which he was injured. Clearly, it ought not to be said that the railway company was under no duty to build and maintain the bridge in a different manner and condition from what it did. It is charged in the complaint, and shown by the answers of the jury to the interrogatories, that the railway company was guilty of negligence, both in the building and maintenance of the bridge.

It is charged in the complaint that, it was so low that a brakeman, in the discharge of his duty in setting brakes, could not, without injury, walk or stand upon the top of the cars. It is shown by the answers of the jury to the interrogatories that the distance from the top of the rails to the bridge was fifteen feet and nine inches, and that the box-cars were eleven feet high, thus leaving a space of four feet and nine inches only between the top of the cars and the bridge. To say that a railway company has performed its whole duty when it erects and maintains such a bridge is, in effect, to say that it may abandon all reasonable care for the safety of its brakemen upon its trains. At best, that service is hazardous enough. Surely, the railway companies should not increase the danger by the erection and maintenance of such low bridges. All reasonable precautions ought to be taken to decrease the danger as much as possible. There can be no

sufficient reason for a holding that while the railway company must exercise reasonable care to provide a safe roadway and bridges below, it may abandon, to a large extent, all care as to bridges above.

Called, as they often are, to their brakes, upon the top of the train in rainy and dark nights, when they have no means of determining exactly the portion of the road over which the train is passing, it might be expected that brakemen will be injured by collisions with bridges such as that described in the complaint and the answers of the jury to the interrogatories.

Assuming that railway companies perform the duties which they owe to their employees, it can not be conceded that the bridge in question was built of the usual and ordinary height.

There is nothing in the complaint or the answers of the jury to the interrogatories showing, or tending to show, that it is a usual or customary thing for railway companies to build and maintain overhead bridges so low as that which caused the injury to appellee.

It is shown that appellee had no knowledge of the condition of the bridge, and that his want of knowledge was not the result of negligence on his part. Because of his want of knowledge, and the increased and unusual hazard caused by the lowness of the bridge, it can not be said that appellee voluntarily assumed the risk of injury therefrom.

Both the demurrer to the complaint, and the motion for judgment in favor of appellant upon the interrogatories, were properly overruled.

In answer to their contention that the bill of exceptions is not in the record, because the rendition of the judgment and the approval of an appeal bond intervened between the overruling of the motion for a new trial and the giving of time within which to file a bill of exceptions, we refer appellee's counsel to the recent case of *Kopelke* v. *Kopelke*, 112 Ind. 435.

Appellant's counsel offered to prove that there are bridges on all railways in the United States too low for brakemen, standing or walking upon the top of ordinary box-cars, to pass under with safety. The court below did not err in excluding the evidence. As we have seen, a railway company falls short of its duty if it constructs overhead bridges so low as to be dangerous to its brakemen in the discharge of their duties. If such bridges are constructed, it is the duty of the company to notify its brakemen of the danger, unless they already have knowledge, or the circumstances are such that they are bound to take notice. That other companies may have neglected their duty and built and maintained low and dangerous bridges, can not exonerate, or tend to exonerate, appellant from liability. There may be some such bridges upon other roads, but there was no offer to prove that they are in such general use as to be an ordinary and usual incident of the service of brakemen. Here, appellee had had but two months experience as a brakeman, and had no knowledge of the low bridge. The fact that other railway companies may have maintained some of their bridges so low as to be dangerous, is not sufficient to charge appellee with notice here. If such low bridges are thus maintained, they are surely the exception and not the rule. *Louisville, etc., R. W. Co.* v. *Pedigo*, 108 Ind. 481.

Appellant's counsel first offered to introduce in evidence a letter, and, second, a portion of a letter, written by appellee to an officer of the railway company before this action was commenced. It is earnestly insisted that the court erred in excluding the letter and the portion thus offered. The letter was written in answer to one received by appellee. It is well settled that an offer or proposition for a compromise of a legal controversy, not accepted, is not competent evidence for or against either party. *Board, etc.,* v. *Verbarg*, 63 Ind. 107 ; *Dailey* v. *Coons*, 64 Ind. 545.

It is also settled that an admission of an independent fact

in no way connected with the offer of compromise, although made during the negotiations, is competent evidence.

In the case of *Wilt* v. *Bird*, 7 Blackf. 258, it was said: "An offer, concession, or admission, made in the course of an ineffectual treaty of compromise, and constituting, in itself, the point yielded for the sake of peace, and not because it was just or true, is not competent evidence against the party making it; but the law is otherwise with regard to an independent fact admitted to be true, but not constituting such yielded point."

An admission of a fact, not made simply because it is a fact, but expressly or clearly for the sake of, and as a part of an attempted compromise, is not competent evidence in a subsequent action against the party making it. *Cates* v. *Kellogg*, 9 Ind. 506.

And so, if an admission is made not simply because it is a fact, but to open the way to a compromise, it is not admissible. *Binford* v. *Young, ante,* p. 174.

That the letter, as a whole, constituted an offer of compromise, is not questioned. We have examined the letter carefully, and are fully persuaded that no portion of it is competent evidence in this action against appellee.

It is very apparent that nothing was admitted as an independent fact, simply because it was a fact, if, indeed, it can be said that there is any admission or statement that could in any way be beneficial to appellant. On the other hand, it seems very clear to us that all that was written was by way of argument for the purpose of bringing about an adjustment to avoid litigation. The whole letter had that single object in view, and, as said in the case of *Home Ins. Co.* v. *Baltimore Warehouse Co.*, 93 U. S. 527 (548), in speaking of an offer to introduce a portion of a letter, written with the object of effecting a compromise, "it contains no statement which can be separated from the offer and convey the idea which was in the writer's mind."

Dr. S. W. Yost, at the time of the trial, had been a practising

physician and surgeon for more than twenty years. *Prima facie*, at least, that rendered him competent to give an opinion as to the probable result of appellee's injuries. He had attended him as physician for some two months after he was injured, at which time he was also in the employ of the railway company as surgeon.

After stating in detail appellee's condition, and the character and condition of his wounds at the time he attended him, he was allowed to state that the probabilities are that he will never, to any great extent, be able to perform manual or mental labor, without a removal of a depressed portion of the bone which was, and is, pressing upon the brain, by reason of the wound upon the head, and that such an operation would be fraught with great danger. It was competent for Dr. Yost to give his opinion as to the probable results of appellee's injuries. *Carthage T. P. Co.* v. *Andrews*, 102 Ind. 138, 145 (52 Am. R. 653); *Louisville, etc., R. W. Co.* v. *Wood*, 113 Ind. 544; *Louisville, etc., R. W. Co.* v. *Falvey*, 104 Ind. 409; *City of Fort Wayne* v. *Coombs*, 107 Ind. 75.

His evidence in that regard was not incompetent because he had not attended appellee continuously up to the time of the trial. He could state his opinion, based upon his knowledge and observation at the time he attended appellee. Had he attended him continuously his testimony might have been of more weight, but it would have been no more competent.

Objections were made below, and are urged here, to the testimony of Dr. Harry L. Taylor. He had been a physician and surgeon since 1872, and at the time of the trial was a professor in the Indiana Eclectic Medical College. *Prima facie*, he was competent to give an opinion as to the probable results of the fracture of appellee's skull. Dr. Yost had given a detailed statement of appellee's condition for two months after he had received the injury. A hypothetical question, involving the facts as stated by him, was propounded to Dr. Taylor, and upon that he was allowed to give his opinion as to the probable results of the injuries. The

testimony of Dr. Yost as to appellee's condition at the time he attended and treated him, was competent evidence in the case, and hence it was competent to embody the facts so given in a hypothetical question to Dr. Taylor. Here, again, the testimony of Dr. Taylor was competent, although it might have been of more weight and importance had it been based upon a hypothetical question embodying the facts as to appellee's condition at the time of the trial.

With a description of the locality, the height of the bridge, and a statement that no danger signals were kept at the bridge, John B. Cooper was allowed to state that, prior to the injury to appellee, three persons, giving their names, being upon the top of moving trains, were injured and crippled by coming in contact with the bridge, some of whom died from the effects of the injuries.

There is some conflict in the authorities, but under our cases, supported by many others, the evidence was competent as tending to show notice on the part of the railway company that the bridge was dangerous. It would not be profitable here to do more than cite the cases. See *City of Delphi* v. *Lowery*, 74 Ind. 520, 523 (39 Am. R. 98), and cases there cited; *Cleveland, etc., R. R. Co.* v. *Newell*, 104 Ind. 264 (54 Am. R. 312); *City of Fort Wayne* v. *Coombs, supra.*

The arguments by appellant's counsel upon the instructions given and refused, are elaborate, and such as to challenge careful consideration, were the instruction in the record. We are met, however, with the contention on the part of appellee's counsel that the instructions are not in the record, for the reason that the record contains no evidence that they were ever filed. They are not embodied in a bill of exceptions. The clerk has copied the instructions into the transcript, but, as contended by appellee's counsel, there is nothing to show that they were ever filed, and hence can not be regarded as a part of the record. As said in the case of *O'Donald* v. *Constant*, 82 Ind. 212: "The transcript contains no copy of the clerk's notation of the filing, nor

any recital that they were filed." Not being a part of the record, the instructions found in the transcript can not be considered by this court. To bring instructions into the record without a bill of exceptions, the statute imperatively requires that they shall be signed by the judge and filed. That they must be thus filed, is a rule of practice established by the Legislature, which this court could not change, if such a change were desired. See R. S. 1881, section 533, clause 6; *Supreme Lodge Knights of Honor* v. *Johnson,* 78 Ind. 110; *Elliott* v. *Russell,* 92 Ind. 526, and cases there cited; *Olds* v. *Deckman,* 98 Ind. 162, and cases there cited; *Landwerlen* v. *Wheeler,* 106 Ind. 523; *Childress* v. *Callender,* 108 Ind. 394; *Fort Wayne, etc., R. W. Co.* v. *Beyerle,* 110 Ind. 100.

It is further contended by counsel for appellant that the verdict and judgment are not supported by sufficient evidence, and are contrary to law. It may be said that it was possible for appellee, while in the employ of the railway company, to have discovered that the bridge was dangerous. He, however, testified positively that he did not know that it was dangerous, and the other facts stated by him and other witnesses are not such as to justify this court in holding, as a matter of law, that he was bound to take notice and exercise the necessary precautions, having such notice, to avoid injury.

Nor can this court, considering all of the evidence in the case, say that the judgment for $10,000 is excessive.

Judgment affirmed, with costs.

Filed March 23, 1888.

### ON PETITION FOR A REHEARING.

ZOLLARS, J.—It was held in the principal opinion that we could not, over appellee's objection, decide the questions made upon the giving and refusal of instructions, for the reason, as then stated, that, although the clerk had copied into the record what purported to be instructions given and refused, there was nothing to show that they had been filed, as required by

the statute, in order that they might become a part of the record without a bill of exceptions.

In its petition for a rehearing appellant's counsel cite us to another portion of the record where the instructions thus given and refused are embodied in a bill of exceptions. This they should have done in their original briefs, as required by Rule 19 of this court.

The question was made in appellee's brief, and in his counsel's statement of points for oral argument, that the instructions were not in the record, for the reasons above stated, and stated in the principal opinion. Appellant's counsel now claim that they met the question thus made in their oral arguments.

If their recollections are correct, ours are at fault. However that may be, as the case is an important one, we give to appellant the benefit of the doubt, and have very carefully examined all of the instructions given and refused, as, also, the arguments of counsel in relation thereto. The theory of appellant's counsel is, that the railway company was only bound to exercise ordinary care in the construction and maintenance of the bridge, and that the jury should have been so instructed; and, further, that if appellee had an opportunity, by the exercise of care, to discover that the bridge was too low to pass under with safety, and remained in the service of the company, he must be held to have voluntarily assumed the risk, and thereby waived all right of action for damages.

Complaint is made that some of the instructions given at the request of appellee, and upon the court's own motion, do not come up to the standard thus fixed by appellant's counsel, in that they omit the element of ordinary care on the part of appellant in the construction and maintenance of the bridge, and put the case to the jury regardless of the assumption of risk on the part of appellee.

It would be a tedious and, we think, unprofitable task to set out all of the numerous instructions thus objected to, and to extend this opinion in meeting, specifically, the ob-

jections urged.   Some of the instructions are somewhat confused, in that the jury were instructed in relation to matters not in issue either by the pleadings or the proof, but we think that the extraneous matters referred to could in no way have misled the jury to the prejudice of appellant. Some of the instructions given were, perhaps, not as full as they might have been, but it has often been held by this court that it is unnecessary, as it is impracticable, to embody all of the law of the case in one instruction, and that where a rule of law applicable to the case is given in one instruction it is not necessary to repeat it in another; and further, that if an instruction contains no erroneous proposition of law as applied to the case, and either party thinks that it is faulty because not full enough, his remedy is to submit additional instructions.   *Louisville, etc., R. W. Co.* v. *Jones*, 108 Ind. 551 (570), and cases there cited; *Board, etc.,* v. *Legg*, 110 Ind. 479 (485), and cases there cited; *Wilson* v. *Trafalgar, etc., G. R. Co.*, 93 Ind. 287 (291).

And so, it has been many times held that all of the instructions given must be considered together, and that, if thus considered, the law was correctly stated in such a manner as to be intelligible, and not confusing to the jury, the judgment will not be reversed by reason of inaccurate statements in any particular instruction.   *Louisville, etc., R. W. Co.* v. *Jones, supra,* and cases there cited; *Cline* v. *Lindsey,* 110 Ind. 337, and cases there cited; *Rauck* v. *State,* 110 Ind. 384, and cases there cited; *Deig* v. *Morehead,* 110 Ind. 451, and cases there cited.

Leaving out of consideration for the present the seventh instruction given at the request of appellee, the others given at his request, and upon the court's own motion, taken together, put the case to the jury substantially upon the theory contended for by appellant's counsel.   And in the ten instructions given at the request of appellant's counsel, their theory was pushed to the utmost limit, and, in some instances,

beyond what reason and the correct rules of the law will justify.

It appears in this case that the brakes which appellee was required to set were on the tops of the cars. It was necessary for him, in getting to them, to pass over the tops of the cars. There are cases which hold that, in such a case, railway companies are not bound to erect the overhead bridges constructed by them, of such a height that brakemen can stand or walk erect upon the tops of the cars without coming in collision with them.

As applied to this case, especially, we can not approve of those rulings. Here, the bridge was but four feet and nine inches above the tops of the cars; the brakes were on the tops of the cars, and, to get to them, the brakemen were required to pass over the tops of the cars, not only in the daytime, but also in the night-time, and often, doubtless, as in this case, when the night was dark, rainy and foggy, and when it would be almost if not quite impossible for them to know of the proximity of such bridges when called to brakes upon moving trains, even if they had knowledge that such bridges were maintained.

To erect and maintain such bridges, under such circumstances, is negligence.

Further reflection has strengthened the conviction on our part, that this conclusion is fully sustained, both by reason and the better authority.

In addition to the authorities cited in the principal opinion, we cite the following: Shearman and Redfield Neg. (4th ed.), section 198, *et seq.*, and notes and cases there cited; Beach Contrib. Neg., section 134; *Chicago, etc., R. R. Co.* v. *Johnson*, 116 Ill. 206.

And where, as here, the facts are shown without any conflict in the evidence, the court may charge the jury that in the erection and maintenance of the bridge the railway company was guilty of negligence. *Board, etc.,* v. *Legg,* 110 Ind. 479, and cases there cited.

In the contract of hiring, an employee assumes all risks ordinarily and naturally incident to the service, but he does not assume the risk of injury from unusual hazards.   To say the least, in this case appellee did not, by his contract of hiring, assume the risk of injury from the low bridge, unless he had knowledge of the hazard.   The danger from such a bridge is not a hazard ordinarily and naturally connected with the service.   It is not shown that he was informed of the danger, nor that he had knowledge of it when he engaged in the service.

As to his duty to exercise care for his own safety, both in discovering the danger and in avoiding the injury, the jury were fully instructed, and, as we have said, and without being more specific, the rule was pushed beyond what reason and the law will sanction.

It is not easy to determine whether the seventh instruction given at the request of appellee was intended to place appellee's right to recover upon the doctrine of comparative negligence, or upon the ground of wilfulness on the part of appellant, in which case negligence on the part of appellee would not defeat his right to recover.   Upon either construction, the instruction was erroneous.   In the first place, the doctrine of comparative negligence, as held by the Illinois court, and as applied to a case like this, has no place in the rulings of this court; and, in the second place, appellant is not charged with wilfulness in the complaint.

The error, however, must be regarded as a harmless one, as the jury found, in answer to interrogatories, that appellee was not guilty of negligence.   It is, therefore, apparent that the verdict was not based upon the greater negligence of appellant and the lesser negligence of appellee; nor upon the theory that, although appellee was guilty of negligence, he could yet recover by reason of wilfulness on the part of appellant.  See *Worley* v. *Moore*, 97 Ind. 15; *Woolery* v. *Louisville, etc., R. W. Co.*, 107 Ind. 381.

As to the eleventh instruction, asked by appellant and re-

fused by the court, it is sufficient to say that it does not state the law correctly, and that if it did, the error in refusing it would be a harmless error, as the second instruction so asked and given embodied the substance of it. *Stephenson* v. *State*, 110 Ind. 358; *National Benefit Ass'n* v. *Grauman*, 107 Ind. 288.

And so of instructions 12 and 12½ asked by appellant and refused by the court; without deciding whether, as asked, they stated the law correctly, it is sufficient to say that the substance of them was embodied in other instructions given.

From what is here said it must not be understood that we intend to endorse in full the theory upon which appellant's counsel have argued the alleged errors in the giving of instructions as above stated, and as applied to a case like this.

After a careful consideration of all of the questions discussed by counsel, we are satisfied that the record presents no error for which the judgment should be reversed.

The petition for a rehearing is, therefore, overruled.

Filed June 20, 1888.