The Salem Stone and Lime Company v. Griffin.

———— ✦ ————

No. 16,809.

SALEM STONE AND LIME COMPANY v. GRIFFIN.

CONTRIBUTORY NEGLIGENCE.—*Negation of.—Special Averments of Facts.*—A general allegation that the plaintiff was free from negligence contributing to the injury sued for, is not overcome by specific averments of facts unless they show that he knew, or had opportunity to know, of the danger.

MASTER AND SERVANT.—*Safety of Premises.—Assumption of Hazards.—Pleading.*—Where it is alleged that "the usual, ordinary and safest" way of passing from an elevated tramway into the defendant's adjoining mill was through a dormer window, it can not be assumed from an averment that the plaintiff's (the servant's) first use of the window was in passing from the tramway into the mill that he had mounted the tramway by a safer method, and that he therefore assumed the hazards of the use of the window.

SAME.—*Construction of Premises.—Equality of Knowledge.*—Where the dangerous agencies leading to the injury of an employe arise out of the negligent construction of the premises, he is not bound to show absence of opportunities, equal to the employer's, for discovering the danger.

SAME.—*Prior Injury to Another at Same Place.—Evidence of Admissible to Show Notice to Master.*—For the purpose of showing notice to the employer of a dangerous condition, evidence that prior to the injury sued for another person was injured at the same place in the same way, is admissible.

SAME.—*Freedom from Fault.—Instruction as to.*—An instruction that an employe, who has used ordinary care to discover the dangers of the

place in which he works, and who is injured by reason of a danger not so discoverable, is free from fault, is not objectionable, if the conditions necessary to a recovery are fully given in other instructions.

SAME.—*What Risks are Assumed and What Not.*—*Notice to Employe of Danger.*—Implied assumptions of risks are only such as are naturally incident to the service, and those which are known, or discoverable by ordinary care, but disregarded by the servant. Dangers which are unknown to the servant, or not discoverable by ordinary care, but which are, or should be, by ordinary care, known to the master, are not assumed, and as to such the master is bound to give notice.

SAME.—*Time of Giving Notice.*—Notice of an unassumed danger must be given before the service involving it is required, and it is not necessary that it should be given at the time of the contract of employment; but where no notice was given at any time, an instruction fixing it at the time of employment is harmless.

SAME.—*Walk.*—*Use of.*—*Ignorance of Danger.*—*Contributory Negligence.* —A walk constructed along a tramway is an invitation to its use, and a servant going upon it in the performance of a duty, without knowledge of dangerous projections from the tramway cars which make it unsafe, is not guilty of contributory negligence.

INSTRUCTIONS TO JURY.—*Burden of Proof.*—An instruction that the plaintiff "in a civil case, where he has established his complaint, that is, the vital, material facts set out in the complaint, should recover," is not harmful if, considered in connection with other instructions, the case is properly given to the jury.

From the Jackson Circuit Court.

*M. Z. Stannard*, for appellant.

*J. A. Zaring* and *M. B. Hottel*, for appellee.

HACKNEY, C. J. — The complaint by the appellee charged that the appellant was engaged in quarrying, sawing, and dressing stone, and in making lime, in which business it occupied a mill and operated a tramway for handling and shifting stone, which tramway was elevated to the height of the roof of said mill and its track ran near said roof. From said roof projected a dormer window two feet wide by three feet high, constructed by the appellant for, and used by employes as, a passage way from said mill and the ground below said tramway, that

being the best way provided for reaching said track. The distance between said track and said dormer window was about twenty-six inches, and in the operation of the carriages, or "travelers," upon said track, the timbers, rods and chains were negligently permitted to project beyond the track from sixteen to eighteen inches, and to within four to eight inches of said dormer window. The appellee was in the service of the appellant from some time in March, 1891, until the 18th day of August, 1891, his principal service being in the yards wheeling spawls and chips from the planer, and on said last named day he was required to perform the service of a "hooker" in attaching and detaching the hooks of one of the carriages while removing stone. In this service it became his duty to assist in replacing upon the track one of the wheels of such carriage which had become derailed, and while upon the tramway for that purpose he was sent to procure a wrench from within the mill. He proceeded over the tramway and passed down into the mill through said dormer window and returned through said window when, just as he had gotten upon said tramway, he was caught between said dormer window and the projecting timbers, rods and chains of another of the carriages operated upon said tramway, and sustained the injuries complained of.

The alleged negligence of the appellant was in constructing said dormer window so close to said track and in permitting said projections so as to be dangerous to employes, and so as to require one passing through said dormer window to stoop in such manner that he could not see, without special care to stop and make observation, before going upon the tramway, to learn if a carriage was approaching; that appellant had negligently directed said service, which was more hazardous than that he had before performed, without notice or warning

to him of the dangers thereof, though appellant knew said dangers and appellee's ignorance thereof.

Besides the general allegation of noncontributory negligence as to the appellee, it is alleged that he had no knowledge of the close proximity of said carriage projections when moving to said dormer window; that his service had never made it necessary for him to observe the construction or operation of said carriage or its nearness to said dormer window; that he had never passed through said window until he was sent for said wrench, and he was wholly unacquainted with the construction and operation of like machinery; that he did not see the approaching carriage, and could not have seen it without stopping and making special observation before passing from the window, and that he could not hear the approaching carriage because of the noise of the workmen and machinery in the mill.

The first question for consideration is the sufficiency of the complaint, and the appellant insists that facts are specifically pleaded which charge the appellee with knowledge of the alleged dangers and with contributory negligence, overthrowing the general allegation of noncontributory negligence.

It is first assumed that in the line of his duties in wheeling spawls and chips in the yard of the appellant, the appellee acquired a general knowledge of the construction of the mill, dormer windows, tramway and carriages in their relations one to another. For aught that appears from the complaint, the appellee's service was not within sight of the tramway and dormer window, and the general allegation that he possessed no knowledge upon this subject, must prevail, unless it may be said that this knowledge was acquired on the day of the injury, for it will be remembered that it was not until that day that he served as "hooker," and we can not say, in

the presence of the general allegation, that he could see, from his location as "hooker," that the track was but 26 inches from the dormer window, and that the timbers, rods and chains of the carriage occupied nearly all of that space. But, it is said, that he was upon the tramway assisting in replacing the carriage wheel upon the track, and that he then learned that the carriage timbers, rods and chains projected, and that when he went over the tramway and down through the dormer he did, or should have, observed that the space between the track and the said window would not admit of his returning over said track. If the carriage which he was assisting in replacing upon the track had been the same that inflicted the injury, the assumed knowledge or opportunity for knowledge would be more reasonable, but when we recall the fact that it was another carriage, the projections from which caught the appellee, we are not at liberty to assume the knowledge or opportunity for knowledge, as contended.

It is also insisted that since the alleged first use of the -dormer was in going from the tramway, we must assume that he got upon the tramway by another and safe means, and that it was, therefore, a voluntary assumption of the hazards of the use of the dormer. It is expressly alleged that the passage way through the dormer "was the usual, ordinary and safest mode and way for defendant's employes" to pass back and forth to and from the tramway. We think, therefore, that the assumption that the appellee mounted the tramway by some provision safer than the dormer, is unwarranted. If we could indulge the presumptions so forcibly and ably urged by counsel, the case cited, *Stewart, Admx.,* v. *Pennsylvania Co.,* 130 Ind. 242, would be of controlling influence.

In that case the opportunities of the servant for know-

ing the time and speed of trains passing the point where he alighted from the train upon which he rode to his work, were apparent from the fact that he had been engaged in working upon a bridge of the company at that point, and if that knowledge had not been assumed, the fact that he alighted on the side of danger instead of the side of a safe landing, and, though enveloped in smoke and steam, and unable to hear an approaching train because of the noise from his own train, he took the hazardous step upon the track was not ordinary care.

It is further insisted that the complaint was defective in not showing that the appellee's opportunities for discovering the dangerous agencies complained of were not equal to those of the appellant. The dangerous agencies were not in the ill repair or falling into decay of the structures, but were in the negligent construction, a fact necessarily known and charged to the knowledge of the master, while the facts are pleaded which not only disaffirm knowledge by the appellee, but, as we have said, deprive us of the power to assume that he had opportunities to know of such dangers. We conclude, therefore, that the complaint was not subject to any of the objections urged to it by appellant's learned counsel.

Upon the trial, a witness for the appellee was permitted, over the appellant's objection and exception, to testify that, prior to the time when appellee was injured, another was injured at the same point, and in being caught between the dormer and the carriage projections. The court admitted the evidence for the purpose of showing notice to the appellant of the dangerous condition of the premises. This was not error. *Louisville, etc., R. W. Co.* v. *Wright*, 115 Ind. 378; *City of Ft. Wayne* v. *Coombs*, 107 Ind. 75; *City of Delphi* v. *Lowery, Admx.*, 74 Ind. 520.

The next inquiry arises upon the charges of the court,

the fourth of which was as follows: "The plaintiff, however, in a civil case where he has established his complaint—that is the vital material facts set out in the complaint—should recover." It is said that the rule thus laid down loses sight of any defense or defenses that might be asserted, and permits a recovery upon a mere *prima facie* showing in disregard of defenses. Other charges stating the theory of the action, the burden of proof, and the requirement that less than all of the facts pleaded by the plaintiff would not support a recovery were given, and, when considered, in connection with that to which exception is taken, presented the question fairly that upon the whole case a preponderance of the evidence must be found in favor of the material facts of the complaint before a verdict for the plaintiff could stand. There is much force in the appellee's suggestion that the answers did not present an affirmative defense, and that, therefore, the construction of the charge, as made by appellant, was authorized.

In addition to the general denial, the appellant answered simply that the appellee knew, before going upon the tramway, of the defects complained of. This was but the negative of the appellee's allegation that he did not know of such defects, and when the affirmative was established by a preponderance of all of the evidence, the negative necessarily failed.

The tenth charge was that "Where an employe has used ordinary care to ascertain the dangers of the place in which he works, and because of some condition of things he could not discover the danger, and if he is then injured by reason of some unknown danger that he did not discover and could not discover by the use of ordinary care, he would not be in fault himself."

The objection urged to this charge is that it states a condition upon which a recovery may be had, omitting

the question of the master's fault or whether the injury may have been the result of unavoidable accident, and overlooking the element of contributory negligence. We think it manifest that appellant has not properly construed the charge. It does not purport to state a condition permitting recovery. When read in connection with the other charges given, this charge is without objection, in acquitting the servant of fault, in going upon dangers which, by the use of ordinary care, could not be discovered. The conditions of recovery, including the element of contributory negligence, were well charged in other instructions given, and the jury could not have been misled by the charge complained of.

The thirteenth charge told the jury that: "In cases where an employe is required to work among latent or hidden dangers known to the employer, but unknown to the employe, it would be the legal duty of the employer, having knowledge of such hidden dangers, to disclose them to the employe."

Appellant's counsel says of the charge that: "It makes it the duty of the employer to notify the employe of hidden dangers known to him, although the dangers may be such as the employe has assumed under his contract of employment."

Implied assumptions of risks are only such as are naturally incident to the service and those which are known or which ordinary care would discover and which are disregarded by the servant. Those dangers which are unknown to the servant, and not discoverable by him with ordinary care, but which are, or by ordinary care of the master should be, known to him, are not assumed. Of such the master is in duty bound to notify his servant and this at the peril of answering in damages.

Mr. Beach, in his work on contributory negligence, section 359, says of this rule: "It is the theory of the

decisions that the servant takes the risk only of what may be denominated 'seen dangers,' but by this is understood nothing more than that a servant is entitled, when there is any danger connected with the machinery or employment in which he is engaged and which ordinary inspection and carefulness on his part will not enable him to avoid, to have it distinctly announced to him. It is meant that, as to such danger, it is particularly the duty of the employer to warn him. He is plainly entitled to have them pointed out when he enters upon the service. When this is done in good faith they become a part of his contract, but, for any failure in this regard, when injury ensues, the master is liable.''

Many cases are cited to support the text and the principles announced have been frequently adopted in this State. *Pittsburgh, etc., R. W. Co.* v. *Adams,* 105 Ind. 151; *Louisville, etc., R. W. Co.* v. *Wright, supra,* and cases there cited.

The hidden danger of which the charge speaks, when applied to the theory of the present case, could not be supposed to include those dangers naturally and necessarily incident to the service.

The fifth and ninth charges given and here questioned, embody substantially the propositions above stated as to the assumed risks and the duty of the master to give notice of those not assumed when hiring the servant.

Appellant objects specially to the requirement stated, that the master shall give notice to ''the servant of such danger when hiring him,'' and contends that it is sufficient if notice be given before injury. The language is probably not the most careful, nor the best, as expressive of the proposition intended by the charge, but this may be excused from the fact that it was copied from the language of this court in *Louisville, etc., R. W. Co.* v. *Wright, supra,* p. 388.

The Salem Stone and Lime Company *v.* Griffin.

It is manifest that the phrase was not employed as intending to direct the notice to the time of the contract of employment, but to the time when the service was required. However, as there was no pretense of notice by the appellant to the appellee, it can not be claimed that harm resulted from the charge.

The action of the court in refusing three instructions asked by the appellant upon the subject of assumed risks and contributory negligence, is complained of. The instructions were, in themselves, unobjectionable, but the same propositions stated in them were fully covered by charges given, and there was no error in the refusal.

Finally, counsel discuss the sufficiency of the evidence, and we have carefully read the entire record of the evidence with a view to passing upon this question. We can not pass upon conflicts in evidence, and when we are required to pass upon the sufficiency of the evidence, it must be understood that we but consider all of that which is favorable to the verdict or finding of the lower court. In this case, there was evidence which, if not controverted, in our opinion, sustained the verdict. The principal contention, upon this branch of the case, by the appellant, is the appellee's failure to look for approaching carriages before leaving the dormer when, as urged, he could have done so. The weakness of this position is in the fact that at the point of leaving the dormer, the appellee stepped upon a board walk made for that use, which, but for the projections from the carriage, would have been safe.

If, therefore, he had no knowledge which would suggest that he should look for dangerous projections over an otherwise safe walk, he would not have been negligent in going upon the walk without looking. It would not require of him the same care as if he had been obliged to go upon the track where the heavy and dan-

gerous machinery was moving frequently. The walk at the side of the track was an invitation to go upon it, and was an assurance,—coupled with the appellant's duty to make it safe, or give notice of its dangers,—that it was safe. Whether the appellee knew, or might by the exercise of ordinary care and prudence, have known of the dangerous projections is involved in conflict upon the evidence, and there being evidence that from beneath the tramway, where appellee had worked, the projections could not be seen, that view we must accept. As to whether the opportunities of the occasion of appellee's first going over the tramway and returning through the dormer were sufficient to advise him of the projections from the carriage, by which he was injured, is a matter about which there might be reasonable differences of opinion, and the jury having construed the evidence and adopted that favorable to the appellee, we are not permitted to disturb it.

We find no error for which the judgment of the circuit court should be reversed, and it is therefore affirmed.

Filed Oct. 18, 1894.