## HOGUE *v.* CHICAGO & A. R. CO.

*(Circuit Court, E. D. Missouri, E. D.* October, 1887.)

1. RAILROAD COMPANIES—NEGLIGENCE—CROSSINGS—DUTY TO MAINTAIN.

In an action against a railroad company to recover for injuries resulting from its negligence in not constructing and maintaining a sufficient crossing, as required by Laws Mo. 1885, p. 87, the defendant can be relieved of liability therefor only by showing that the crossing was constructed in strict compliance with the statute; that it has always been maintained in a safe condition; and that it is located in that part of the street that is graded and usually traveled by vehicles; or that the failure to do any of these things was not the direct cause of the injury; or that the accident was the result of the negligence of the person injured; or that it was the result of the negligence of neither; or when the plaintiff, upon whom the burden of proof rests, fails to show by a preponderance of evidence that the defendant has failed to discharge its duty in some respect.

2. NEGLIGENCE—ACTION FOR DEATH OF HUSBAND—DAMAGES.

In an action brought by a wife against a railroad company, to recover damages for her husband's death caused by the failure of the company to construct and maintain a sufficient crossing, it is proper for the jury, in assessing the damages, to consider the age of the husband, his health and habits of life, and his capacity for earning a livelihood for himself and his family.[1]

*D. P. Dyer*, for plaintiff.
*R. H. Kern*, for defendant.

THAYER, J., *(orally charging jury.)* The sole ground relied upon by the plaintiff in this case for recovery is that the defendant railroad company failed to construct and maintain a good and sufficient crossing where the defendant's railroad crosses the Louisiana and Prairieville graveled road in the city of Louisiana, Missouri; and that in consequence of such neglect plaintiff's husband was thrown from his wagon, and killed, as he was driving over that crossing. The statute of this state with regard to railroad crossings is as follows (I read section 807, Revised Statutes of Missouri, as amended on March 27, 1885, Session Laws of Missouri, 1885, p. 87:)

"Every railroad corporation shall construct and maintain good and sufficient crossings, where its railroad crosses public roads or town streets now or hereafter to be opened for public use, which crossing shall be constructed out of materials and in the manner following: On each side of each rail shall be laid, and securely spiked to the cross ties, a plank of not less than 10 inches in width, and two inches in thickness, nor less than 16 feet in length on all public roads, nor less than 24 feet in length on all streets in towns and cities, to be of good and sound timber. The space between the inside planks shall be filled with macadam or gravel, even with the top of the planks; and shall make good and sufficient approaches thereto, of equal width therewith, and

---

[1] In an action brought for the benefit of the widow, for the negligence of a railroad company in causing the death of the husband, the jury may consider the age of the deceased, the injury to his business, his capacity to earn money, his health, and his general condition of life. Clapp v. Railway Co., (Minn.) 29 N. W. Rep. 340. In general, as to the measure of damages for negligently causing death, see Cooper v. Railway Co., (Mich.) 33 N. W. Rep. 306; County of Howard v. Legg, (Ind.) 11 N. E. Rep. 612, and note.

of easy grade. The same shall be covered with gravel or macadam to a depth of not less than six inches, and shall be substantially and properly joined up to the plank required to be laid on the outside of each rail; provided that such corporation may make such road or street to pass under its said railroad where the same can be done with equal convenience and safety to the traveling public."

I read as much of the section as is material for the purposes of this case. This statute which I have just read to you is obligatory upon the defendant in this case, and determines its duty with respect to railroad crossings. It is a statute that requires no particular explanation, but I may remark that it may sometimes happen that a street as dedicated or laid out is 40, 50, or even 60 feet in width, whereas the part actually graded and traveled over, that is, the road-bed proper, may be much narrower, say 24, 20, or even 16 feet.

Now, in locating the planking specified by the statute, the court instructs you that in a case such as I have last supposed, it would be the duty of a railroad company to locate the planking on that particular part of the street that is graded and usually traveled over by wagons and vehicles. I may further say, gentlemen, that the duty imposed upon a railroad company by this statute is not discharged by merely putting down such planking as the statute describes. It is the duty of a railroad company not only to put down such planking as is described in the statute, and to locate it in that part of the street or road that is graded and usually traveled over by wagons and vehicles, but it is also its duty to maintain the planking, after it is laid, in a good and ordinarily safe condition at all times.

A railroad company is liable under this statute for all injuries that may be sustained by a person without any fault on his part, directly in consequence of a failure either to put down planking in the first instance, of the dimensions and quality described in the statute, or by a failure to locate it in that part of the roadway that is graded and usually traveled over, or by a failure to keep the planking in an ordinarily safe condition after it is laid.

Now in this case you must determine from the evidence:

(1) Whether the defendant, on February 8, 1886, had such a planking as the statute describes, 24 feet in length, on the north side of the northerly rail of its track, at the crossing of the Louisiana and Prairieville graveled road in Louisiana, Missouri, and whether such planking was laid in that part of the road that was graded and usually traveled by teams, and was at that time in an ordinarily safe and good condition.

(2) If you find under the testimony that there was not the requisite length of planking laid at that point or crossing, or if you find that there was the requisite length of planking, that is, 24 feet or over, but that it was not laid in that part of the street that was usually traveled over by teams, or if you find that the planking at that time was not in an ordinarily good and safe condition, then you must further inquire and determine from the evidence before you, whether such lack of planking, or whether its being out of its proper place in the street, or whether its being in a defective and unsafe condition, as the case may be, was the immediate and direct cause of the injury which plaintiff's husband sustained; and if you find that it was such immediate cause, you will then return a verdict in favor of the plaintiff.

On the other hand, gentlemen, if you find that at and before the accident the railroad company had caused to be laid as much as 24 feet of planking, of the requisite dimensions and quality, described in the statute, at the point in question, that is, at this crossing, and had located it across the usually traveled portion of the street, and had maintained it in an ordinarily safe condition up to the time of the accident, then that will end the case, and you will find for the defendant.

Now, there is another view of the case I wish to present to you, and it is this: No person can recover compensation for an injury that is sustained in consequence of the fault or neglect of another person or corporation, if he has by his own fault or neglect directly contributed to produce that injury. It follows, gentlemen, that if plaintiff's husband, by any want of ordinary care or prudence on his part, immediately contributed to the injury sustained, then this plaintiff cannot recover, no matter how negligent the defendant may have been in taking care of this particular railroad crossing. In this view of the case, I call your careful attention to the testimony respecting the conduct of the plaintiff's husband as he approached the crossing in question on the occasion of the injury. If under the testimony you believe that he neglected on that occasion to take any precaution, either in driving or in sitting on his wagon, or in looking out for obstructions, that would under all the circumstances of the case have been taken by a person of ordinary prudence, and that such want of care on his part directly contributed to the injury, then the verdict in this case should be for the defendant.

If you believe that he drove the wheel of his wagon against an exposed portion of the iron rail or railroad tie, when he might in the exercise of ordinary care as well have driven over the track where it was protected by planking, and thus have avoided the injury, then he was negligent, and the plaintiff cannot recover, no matter what may have been the negligence of the railroad company.

There is still another view of the testimony which you may take in this case, and therefore I allude to it. You may be of the opinion that the plaintiff's husband was not guilty of any negligence, and that the railroad company discharged its full duty under the statute in taking care of the crossing. If that should be your view of the case, under the evidence, then the injury in question was the result of what is termed in law an accident, for which no one is legally responsible, and in that view of the case you must find for the defendant.

In weighing the testimony in the case you must also bear in mind that the presumption of law is that the defendant fully performed the duty imposed upon it by law with respect to taking care of the crossing, and the burden is on the plaintiff to show, by a preponderance of evidence, that it failed to discharge that duty in some respect, and unless they have so shown you must find for the defendant.

In the event that you find the plaintiff is entitled to a verdict, under the evidence in this case, and under these instructions, then the statute under which this action is brought allows you to assess such damages as you deem "fair and just, not exceeding $5,000, having reference to the

necessary injury resulting to the plaintiff from the death of her husband." The meaning of that is, gentlemen, that you should determine, as well as you can, what damage plaintiff will necessarily sustain by reason of the loss of her husband. You may take into account the age of her husband, his health and habits of life, and his capacity for earning a livelihood for himself and his family, and from such considerations determine, as well as you can, what would be a fair and just allowance to the widow, —that is to say, what was her necessary loss in consequence of her husband's death.