KELLEHER, Administrator, Respondent, vs. THE MILWAUKEE & NORTHERN RAILROAD COMPANY, Appellant.

*November 19 — December 15, 1891.*

*Railroads: Injury to switchman: Proximity of shed to track: Negligence: Sufficiency of finding: Court and jury.*

1. In an action against a railroad company for the death of a switchman caused by the proximity of a shed to a side track, a finding by the jury that " the shed was so close to the track as to render the

place unnecessarily dangerous to employees in performing their duties at that place," is *held* a sufficient finding of defendant's negligence.

2. The switchman was upon the platform of a car which was being switched on the side track. Water was running from a steam-pipe at the end of the car, and to avoid it he leaned outward from the steps, and was struck by the shed, which was 22½ inches from the side of the car. His duties required him to be upon the platform and at times to lean out. There was evidence tending to show that he did not know of the shed and its distance from the track, and had not the means of such knowledge. *Held*, that the court could not say, as matter of law, that the defendant was not negligent or that the plaintiff was guilty of contributory negligence.

APPEAL from the Circuit Court for *Brown* County.

Action by respondent, as administrator, on account of the death of his son, a minor, nineteen years and eight months of age. The deceased was a switchman in defendant's yard at Green Bay, and was killed April 12, 1890. On that day the switch engine, with deceased and two other switchmen, was sent to remove a mail car and coal car from a side track in the yard. This side track was the outside track in the yard, and a coal-shed stood near it; from which passenger and mail cars were supplied with coal when switched onto this track for that purpose. This seems to have been practically the only purpose to which this side track was put. On the morning in question a coal car and mail car stood on this track north of the coal-shed, the mail car being to the south, and the switch engine was to throw the coal car out on the main line and the mail car back. The engine came from the south. Couplings were made by the switchmen, and the engine started south with the two cars, the intestate and one other switchman standing on the platform at the north end of the mail car, which point was then 100 to 130 feet north of the coal-shed, and the other switchman being at the north end of the coal car. As the cars started, water commenced running down from a steam-pipe at the north end of the mail car upon deceased, who

got down on the lowest step of the platform on the west side of the car to avoid the water, which was blowing in his face. The water continued to blow in his face, and he took hold of the hand-railings and swung his body outside of the car, throwing his head back in the effort to avoid it. While so standing, the train moving six to eight miles an hour, his head and shoulders struck against some part of the coal-shed, and he was thrown under the wheels of the coal car and killed. It was his duty to jump off the train while in motion, and throw a switch about eight or ten car-lengths from where he started. The coal-shed was 22½ inches from the side of the mail car at its nearest point. The shed had been there several years, and is nearly opposite the station. Deceased had worked in the yard as switchman nearly or quite a year, and before that time had been yard-clerk for a short time. It does not positively appear that he ever made this switch before. If he had done so at all, it was but a few times.

In response to appropriate questions, the jury found (1) that the shed was so close to the track as to render the place unnecessarily dangerous to employees in performing their duties at that place; (2) that deceased did not know of the existence of the shed and its distance from the track and cars; (3) that he had not the means of such knowledge; (4) that he could not have avoided the accident by the exercise of ordinary care; and plaintiff's damages were assessed at $1,200. A motion for a new trial was overruled, and judgment entered on the verdict, from which defendant appeals.

For the appellant there was a brief by *Greene & Vroman*, and oral argument by *Geo. G. Greene.* They contended, *inter alia*, that the defendant was not negligent. Negligence cannot be predicated of an act not *likely* to cause injury. Care does not demand providence against the improbable. *Atkinson v. Goodrich Transp. Co.* 60 Wis. 164;

*Sjogren v. Hall*, 53 Mich. 274; *Deford v. State*, 30 Md. 179; *McHenry v. Marr*, 39 id. 510; *Steffen v. C. & N. W. R. Co.* 46 Wis. 259; 14 Am. & Eng. Ency. of Law, 890; *Kellogg v. C. & N. W. R. Co.* 26 Wis. 223. The plaintiff's negligence contributed to the injury. "It is contributory negligence, if, in the attempt to avoid that which is merely inconvenient and in no sense dangerous, the person injured encounters a danger obviously apparent to the minds of reasonable men." Patterson, R'y Acc. Law, 63; *Goldstein v. C., M. & St. P. R. Co.* 46 Wis. 406; *Railroad Co. v. Depew*, 40 Ohio St. 127. It is negligence for a railroad employee to needlessly project his body from the side of a moving car, even in the performance of his duty. *Thompson v. B. & M. R. Co.* 153 Mass. 391; *Jones' Adm'r v. L. & N. R. Co.* 82 Ky. 610; *St. L. & S. F. R. Co. v. McKer*, 41 Ark. 542. So, it is negligence in a passenger to protrude his limbs or body beyond the side of a moving car. *Favre v. L. & N. R. Co.* 16 S. W. Rep. (Ky.), 370; *Moore v. Edison E. I. Co.* 9 So. Rep. (La.), 433; *Louisville & N. R. Co. v. Sickings*, 5 Bush, 1; *Spencer v. M. & P. du C. R. Co.* 17 Wis. 494.

For the respondent there was a brief by *Wigman & Martin*, and oral argument by *P. H. Martin*. They cited, as in cases in which, under essentially like circumstances, railway companies have been held liable, *Ill. Cent. R. Co. v. Welch*, 52 Ill. 183; *Chicago & I. R. Co. v. Russell*, 91 id. 298; *Nugent v. B., C. & M. R. Co.* 80 Me. 62; *Pidcock v. U. P. R. Co.* 5 Utah, 612; *Robel v. C., M. & St. P. R. Co.* 27 Minn. 305; *Allen v. B., C. R. & N. R. Co.* 57 Iowa, 623; *Kearns v. C., M. & St. P. R. Co.* 66 id. 599; *Dorsey v. P. & C. Const. Co.* 42 Wis. 583; *Boss v. N. P. R. Co.* 5 Dak. 309; *Arabello v. S. A. & A. P. R. Co.* 11 S. W. Rep. (Tex.), 913; *Chicago, B. & Q. R. Co. v. Gregory*, 58 Ill. 272; *Sweet v. Mich. Cent. R. Co.* 49 N. W. Rep. (Mich.), 882. It is not contributory negligence to avoid an inconvenience by any

act not obviously dangerous. Patterson, R'y Acc. Law, sec. 65; *Johnson v. W., C. & P. R. Co.* 70 Pa. St. 357; *Sobieski v. St. P. & D. R. Co.* 41 Minn. 169.

Winslow, J. The trial seems to have been in all respects fair. No exceptions are urged either to the rulings upon testimony or to the instructions of the court. The facts are not in dispute, but the appellant urges: *First,* that there is no sufficient finding of defendant's negligence; *second,* that the defendant was not negligent; *third,* that plaintiff assumed the risk, and was guilty of contributory negligence.

The jury found that the shed was so close to the track as to render the place unnecessarily dangerous to employees in performing their duties. It is objected that the true test is not whether it was "unnecessarily" dangerous, but whether it was unreasonably dangerous. This contention cannot prevail. It is settled in this state that the duty of the company is to see that its tracks are not so obstructed as to render the duties of its employees unnecessarily hazardous. *Dorsey v. Phillips & C. Const. Co.* 42 Wis. 583; *Bessex v. C. & N. W. R. Co.* 45 Wis. 477.

Must the court say that there was no negligence in maintaining the coal-shed where it was? In order to say this there must be no other reasonable inference warranted by the facts. The exact question, then, is whether the only reasonable inference from the undisputed facts is that the proximity of the shed did not unnecessarily increase the danger to switchmen performing the duties required of the intestate. This question is abstract, rather than concrete. To answer it properly requires a consideration of all the duties required of the deceased as switchman at this place, not simply a consideration of the act which he was then engaged in.

It appears that it was the duty of the switchman to sig-

nal the engineer. To do this (if he is upon the mail car) he must stand on the step of the platform. He cannot mount to the roof, nor can he go inside the car. He must necessarily lean out from the side of the car to some extent in order that his signals may be seen. It was also a switchman's duty to jump from the car while in motion, and turn a switch a short distance south of the shed. Here were two duties, at least, which might require a switchman to project his body beyond the side of the car at or about this place. In view of these duties and the shortness of the space between the side of the car and the shed, can it be said as matter of law that but one reasonable inference can be drawn from the facts? We think not. The question was properly for the jury, and their verdict, in the absence of error, is conclusive.

It was argued with great force that plaintiff's intestate must be held guilty of contributory negligence. Undoubtedly, if he had without cause, in mere wantonness or sport, projected his body from the side of the car, he would have been guilty of contributory negligence. But this was not the case. He was riding on the steps of the car, where it was evidently his duty to be, preparatory to jumping off to throw a switch. While so riding, a stream of water drips upon him from the roof of the car. The natural impulse is to avoid such an involuntary shower-bath. He could not go in the car, because he must soon jump off. The steps on the other side were occupied by his brother switchman. In this situation he took the course which is most natural; a course which nine men out of ten would probably have taken under like circumstances; a course which, under ordinary circumstances, would result in no harm. Looking at the act now, in view of the consequences, we can readily see that it was dangerous. But this is not the test. The test is, What would a man exercising ordinary prudence have done under like circumstances, and with like knowl-

edge, at that time? If he would or might have done what the intestate did, then the act was not contributory negligence. This question was for the jury. It was properly submitted, and their answer must stand.

We see no reason for disturbing the verdict of the jury as to the knowledge or means of knowledge possessed by deceased of the location of the shed and its distance from the track.

The damages do not seem to us excessive, in view of the circumstances of the parents.

*By the Court.*— Judgment affirmed.