### THE CITIZENS STREET RAILROAD COMPANY ET AL.
### *v.* BALLARD, ADMINISTRATRIX.

[No. 2,790.    Filed Jan. 24, 1899.    Rehearing denied March 31, 1899.]

CONTRIBUTORY NEGLIGENCE.—*Interrogatories.*—*Verdict.*—An answer to an interrogatory in an action for damages on account of the death of plaintiff's decedent, that the evidence does not show what care decedent was using at the time of the accident, is not necessarily a finding that the evidence does not show that he was exercising any care, and is not inconsistent with a general verdict for plaintiff.  *pp. 154, 155.*

SAME.—*Knowledge of Danger.*—*Streets.*—One has the right to presume, and to act on the presumption, unless he has knowledge to the contrary, that a street is in a reasonably safe condition for travel; and the fact that he knows, or has reason to believe, the street to be unsafe will not preclude him from using same, if he uses care proportioned to the known or apprehended danger.  *p. 156.*

INSTRUCTIONS.—*Defective Streets.*—*Constructive Notice.*—An instruction, in an action for damages resulting from a defective street, as to what constitutes constructive notice, that " a very short time may be sufficient, considering the location of the defect in a street, the character of it, the extent to which the street is used, to what extent the defect or obstruction is permanent and prominent, and such other things as throw light on the question," is not objectionable as inviting the jury to consider everything they might think proper, where the instruction ended with the sentence: " What the facts are, and the reasonable inferences therefrom, are for you to determine, under all the evidence and circumstances considered in accord with the court's instructions."  *pp. 156, 157.*

STREETS.—*Street Railways.*—Where a street railway is built in a public highway under a contract with the county commissioners, it is the duty of the railway company to maintain its track so as to preserve the public highway in a reasonably safe condition for public use and travel after the highway became a part of the city, whether there was any ordinance requiring it to be done or not.  *pp. 157, 158.*

From the Marion Superior Court.  *Affirmed.*

*W. H. Latta, John W. Kern* and *J. E. Bell,* for appellants. *George W. Spahr,* for appellee.

ROBINSON, J.—Appellants appeal from a judgment in appellee's favor awarding damages for the death of appellee's decedent. For opinion on the former appeal of this case, see 18 Ind. App. 522.

The only errors assigned which are discussed by appellants' counsel question the overruling of the motion for judgment in appellants' favor on the answers to the interrogatories, notwithstanding the general verdict, and overruling appellants' motion for a new trial.

The jury returned a general verdict in appellee's favor, and with it answered the following interrogatories: "(1) Q. Was the Citizens Street Railroad Company operating a track where the plaintiff's decedent was hurt at the time of his injury, under a contract with the board of commissioners of Marion county, Indiana, granted at the September term, 1865? A. No. (2) Q. Did the said contract with said county commissioners require the Citizens Street Railroad Company to keep any portion of West Washington street in repair? A. Yes. (3) Q. Was the place where plaintiff's decedent was injured, at the time defendant laid its track at that point, a part of the city of Indianapolis? A. No. (4) Q. Has said territory since been annexed by the city of Indianapolis? A. Yes. (5) Q. Did the Citizens Street Railroad Company when it originally laid the said track, lay the same so that the tops of the rails were on a level with the established grade of said Washington street? A. No. (6) Q. Had there ever been, up to the time of the accident, any change in the established grade of said Washington street? A. No. (7) Q. Had there ever been any change up to the time of this accident, in the elevation of the rails of said track? A. No. (8) Q. Did the plaintiff's decedent's vehicle upset at the time when the right hind wheel thereof was upon the north rail of the street car track, and the remaining

wheels had passed over the same to the north side thereof? A. No. (9) Q. Did the vehicle of plaintiff's decedent upset when the right hind wheel was between the rails of the street car track, and the remaining wheels thereof had passed over said track to the north side thereof? A. No. (10) Q. Was there a depression or declivity in Washington street at the time of the accident of plaintiff's decedent, about four feet deep? A. Yes. (11) Q. Did the south edge of said depression or declivity extend up to within twenty inches of the said defendant's street car track? A. Yes, clear to the track. (12) Q. At the time the vehicle of the plaintiff's decedent upset, was the left fore wheel at the bottom of said depression? A. No. (13) Q. At the time the vehicle of the plaintiff's decedent upset, was the left hind wheel and the right fore wheel upon the slope of said depression or declivity? A. No. (14) Q. Was the said slope one of about forty-five degrees? A. Yes. (15) Q. Would the said vehicle have upset, just as it did upset, if the space between the rails of said street car track and for eighteen inches on each side thereof had been filled up to the level with the top of said rails? A. No. (16) Q. Did said vehicle upset because of the depression or declivity upon the north side of said street car track? A. Yes. (17) Q. Is there any evidence to show what care the plaintiff's decedent, Jehu Ballard, was using at the time of the accident? A. No. (18) Q. Did the plaintiff's decedent, Jehu Ballard, [upset] at a place about 125 feet from his front gate? A. Yes. (19) Q. had he been living at said place eighteen months? A. Yes. (20) Q. Was the said depression and declivity and the street railroad track in plain view from his front gate? A. No. (21) Q. Did the plaintiff's decedent know of the existence of the said depression or declivity, and of the condition of said street railroad track at the time of his injury? A. No. (22) Q. Was plaintiff's decedent, at the time of his injury, driving a blind horse? A. Yes. (23) Q. Had said depression or declivity been in Washington street since 1887, in the condition it was in January, 1894?

A. Yes.    (24) Q. Was plaintiff's decedent, Jehu Ballard, driving his wagon at the time it upset?    A. Yes.    (25) Q. Does the evidence show that plaintiff's decedent, Jehu Ballard, did not know the condition of Washington street between the street car tracks and north of the same at the time of and before the injury?    A. Yes.    (26) Q. Was Washington street at the place of the accident, between the rails and immediately next to the same, worn below the original grade by the travel upon said street?    A. Yes.    (27) Q. How much had the street at such place been worn below the tops of the rails of the street car track?    A. Six inches.    (28)    Q. Had such portion of the street been in this condition for a period of eighteen months, at least, at the time of the accident to the plaintiff's decedent?    A. Yes.    (29) Q. Was the death of Jehu Ballard caused by falling out of his wagon on Washington street?    A. Yes.    (30) Q. Did any negligence of the street railway company proximately cause the fall of plaintiff's decedent?    A. Yes."

Taking the answers to the interrogatories and the evidence in support of them, and we cannot escape the conclusion that the negligence of both the city and the railway company is shown.    The answers to the interrogatories show a condition of affairs establishing negligence on the part of both the city and the railway company, beyond question.    The street was not only unsafe for public travel, but both it and the railway tracks had been permitted to remain in that unsafe condition for eighteen months.    And the answers to the interrogatories are not inconsistent with the general verdict finding appellee's decedent free from contributory negligence, unless the seventeenth interrogatory and answer make them so.

The jury, by their general verdict, found, in effect, that the decedent at the time of his injury, was exercising such care as a reasonably prudent person would exercise under like circumstances.    And the answer of the jury that the evidence does not show what care he was using at the time of the ac-

cident is not necessarily a finding that the evidence does not show that he was exercising any care. It is said by counsel in their brief that, in preparing this interrogatory, the exact language employed in the case of *City of Bedford* v. *Neal,* 143 Ind. 425, was used. In the opinion in that case the court used this language: "There is no evidence to show what *degree of care* she [the person injured] used to avoid danger in passing over the walk at the time she was injured." The court was not discussing any interrogatory. It is not the province of the jury to find the degree of care used, and the interrogatory in the form asked does not necessarily ask whether the evidence shows he was exercising any care. The jury may have understood the question asked as they would have understood it if the exact language in the Neal case had been used; and to such a question the answer they did make would not be inconsistent with the general verdict. The question asked might be construed to mean the kind of care used, and, when the jury say that the evidence does not show this, they do not necessarily say that the evidence does not show that any care was used. A question could easily be framed that would ask that question directly.

It appears from the evidence that the accident resulting in decedent's death happened between 6 and 7 o'clock in the evening in the month of January; that it was dark; that the horse decedent was driving was blind; that decedent was pursuing his usual avocation; that he was going in a direct line to his place of destination, to deliver a trunk. It was too dark to see the surface of the street and the street-car track, but the outline of the horse and wagon could be seen by a person standing on the lot abutting the street, and opposite the place where the accident occurred. A witness who saw the decedent driving across the street, and saw the wagon upset, testified that he noticed no increase of speed of the horse, nor anything of that sort, just before the accident occurred. It appears the decedent was at a place where he had a right to be, and was doing what he had a right to do. The jury

found as a fact that the decedent did not know of the existence of the declivity in the street, or of the condition of the street railroad track, at the time of his injury. It is true there was evidence tending to show that he might have known the condition of the track and street; but from all the evidence in the case the jury could conclude, as they did, that he did not know their condition.

From a careful review of all the evidence, we think the record discloses some evidence to sustain the finding that both appellants were negligent in permitting the street and railroad track to be and remain in the condition they were in at the time of the injury, and that the decedent was exercising such care as an ordinarily prudent person would use under the circumstances.

The court properly instructed the jury that the decedent had the right to presume, and to act on the presumption, unless he had knowledge to the contrary, that the street was in a reasonably safe condition for travel by him, if he used due care; and the fact that he knew or had reason to believe the street unsafe would not preclude him from using the street; but in such case he must use care proportioned to the danger of which he knew or had reason to apprehend; and if he did not know or have reason to apprehend danger, or knew it and used care proportioned to the known or reasonably apprehended danger, and, notwithstanding such care, was injured, then, so far as contributory negligence was concerned, there might be a recovery.

In speaking of what constitutes constructive notice, the court told the jury: "A very short time may be sufficient, considering the location of the defect in a street, the character of it, the extent to which the street is used, to what extent the defect or obstruction is permanent and prominent, and such other things as throw light on the question. What the facts are, and the reasonable inferences therefrom, are for you to determine, under all the evidence and circumstances considered in accord with the court's instructions."

It is argued that the clause "and such other things as throw light on the matter" is too broad, and invited the jury to consider everything they might think proper. If the instruction stopped with that clause,—and counsel discuss it as though it did,—the objection might be well taken; but with the closing sentence, we think the jury must have understood that they were to consider only such things or facts as were shown by the evidence.

In its thirteenth instruction the court said to the jury: "If you find that at the time said track was placed in said highway the territory at the point in controversy was not in the city of Indianapolis, and that said track was so placed by consent of and contract with the board of county commissioners, but that thereafter said territory was annexed to and became part of said city, and the city undertook, by ordinance, to name terms and conditions for the maintenance of said track for the purpose of preserving the public highway at that point in a reasonably safe condition for public use and travel, and said street railroad company accepted the terms of said ordinance then the ordinance terms would be binding on said company, and any violation of the terms of said ordinance rendering said highway dangerous to travelers, would be negligence; and if said condition proximately caused the death of John Ballard, and he was at the time using due care, the defendant company would be liable therefor." It is objected to this instruction, that it assumed that the ordinance of the city of Indianapolis was passed in an attempt to establish a method of maintaining this street, in common with others, and was so accepted by the company. But we fail to see wherein this instruction is objectionable. Even if the street railway was built under a contract with the county commissioners, when the highway became a part of the city it was the duty of the company to maintain its track so as to preserve the public highway in a reasonably safe condition for public use and travel; and it was its duty to do this whether there was any ordinance requiring it to be done or

not. It was the duty of the company to keep its tracks in such condition as not to render the highway 'unsafe for the public, regardless of any privilege granted or attempted to be granted by the board of commissioners; and this duty continued as long as the highway remained a public highway, no matter within what jurisdiction it might be. The instruction is directed simply to the duty of the company to keep the track in such condition as not to render the street unsafe for public use and travel. The cases cited by counsel denying the right of a municipality to impose additional burdens to those provided for in the contract with the municipality are not in point. Requiring a railway company to keep its tracks in such condition as not to interfere with the public use of the street is quite a different thing from requiring the company to make a certain kind of improvement prescribed by the municipality, and not provided for in the original contract between the company and city.

It is argued that the evidence does not show that the death of appellee's decedent resulted from the injury received. The jury answered that it did, and it cannot be denied that there was some evidence to sustain this finding. Counsel have discussed this evidence, but it is clear we cannot disturb the jury's finding upon this point without weighing the evidence, and this we cannot do. While a court might believe that the great weight of intelligent testimony in a given case was against a jury's finding, yet, if the finding is supported by some evidence, the verdict must stand.

The court fully instructed the jury on the question of proximate cause, and the instructions requested by appellants upon that branch of the case were covered by the instructions given by the court. The court's instructions cover the whole case, and clearly and correctly state the law as applicable to the evidence. There is no error in the record, and the judgment is affirmed.