## PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY v. PARISH, ADMINISTRATRIX.

[No. 3,897.   Filed January 14, 1902.]

MASTER AND SERVANT. — *Railroads.* — *Overhead Obstructions.* — The danger from the branches of trees which a railroad company permits to hang over its tracks so low that they come in contact with employes while engaged in their duties on the tops of its cars is not a danger incident to the service.  *pp. 193, 194.*

SAME.—*Railroads.*—*Overhead Obstructions.*—A railroad employe whose duties require him to go upon the tops of the cars has the right to assume that the company will not permit a dangerous obstruction to remain above its tracks.  *p. 194.*

SAME.—*Railroads.*—*Removal of Overhanging Limbs.*—Where the removal of overhanging limbs of trees is necessary to provide a reasonably safe place for the trainmen of a railroad company to work, it is not only the right but the duty of the company to remove such overhanging limbs.  *p. 195.*

Pittsburgh, etc., R. Co. v. Parish.

CONTRIBUTORY NEGLIGENCE.—*Circumstantial Evidence.*—Freedom from contributory negligence, like any other disputed fact, may be proved by circumstantial evidence.  *p. 196.*

RAILROADS.—*Overhead Obstructions.*—*Evidence.*—A finding of the jury that plaintiff's intestate was knocked from the top of a car by the limbs of a tree was justified by evidence which showed that decedent was a careful, competent and experienced railroad conductor; that at the time of the accident he was in a proper place in the performance of his duty; that he had not at any time been warned of the existence of the danger; that he was seen to leave the caboose with his lantern; that a witness saw the motion of a man's arms, and saw the branches of a tree moving, and saw the lantern fall, and another witness saw decedent fall from the top of the car at a place consistent with the theory that the overhanging tree branches caused him to fall.  *pp. 196–198.*

SAME.—*Death of Employe Caused by Overhanging Limbs.*—*Due Care.*— A sober, careful and experienced railroad conductor while in the line of his duty was knocked off the top of a freight car by overhanging limbs of a tree and killed.  The overhanging limbs were not such an obstruction as was at all times apparent to persons on the top of the cars and decedent did not know and while acting as conductor did not have reasonable opportunity to learn of the dangerous character of the obstruction.  *Held,* that the jury properly found that decedent was exercising due care at the time he was killed.  *p. 198.*

MASTER AND SERVANT.—*Due Care.*—*Evidence.*—In an action for the death of an employe, it is proper to consider, on the question of due care, that the decedent was a sober, industrious and experienced employe.  *p. 199.*

CONTRIBUTORY NEGLIGENCE.—*Evidence.*—Slight positive testimony, whether circumstantial or otherwise, when taken in connection with the instincts of self preservation, and the desire to avoid pain and injury to oneself, may be sufficient to support a conclusion that one who suffers injury did not help to bring it upon himself.  *p. 200.*

MASTER AND SERVANT.—*Overhead Obstructions.*—*Assumption of Risk.*— In an action against a railroad company for the death of an employe caused by an overhead obstruction, in the nature of overhanging limbs of a tree, it was for the jury to determine from all the circumstances of the case whether or not such employe assumed the risk of injury from such obstruction.  *pp. 201, 202.*

SAME.—*Assumption of Risk.*—*Instructions.*—In an action against a railroad company for negligently causing the death of an employe, an instruction which did not purport to state all the material facts was not erroneous because of the omission of the element of decedent's duty respecting open and obvious risks, where the omission was fully covered by other instructions.  *pp. 202, 203.*

Pittsburgh, etc., R. Co. *v.* Parish.

MASTER AND SERVANT.—*Assumption of Risk.—Equal Knowledge.*—The principle that the law will not permit a servant to recover from his master for an injury resulting on account of a dangerous defect in the service can only apply where the servant is under the same obligation as the master to know the condition of the service.   *p. 203.*

SAME.—*Measure of Damages.—Evidence.*—In an action for the death of an employe caused by the negligence of the employer, evidence as to the character of decedent for sobriety and industry is competent on the question of damages.   *p. 204.*

SAME.—*Knowledge of Danger.—Evidence:*—Although no legal obligation rested upon a railroad company to erect and maintain warners on either side of a tree the limbs of which overhung the track, and the failure to do so was not negligence, yet, in an action against the company for the death of a conductor caused by such obstruction, evidence that warners had not been erected was admissible as tending to show that decedent did not know of the obstruction and had not been warned of the danger.   *p. 205.*

SAME.—*Railroads.—Obstruction of Track.—Evidence.*—It appearing that defendant had allowed the limbs of a tree to obstruct its track for a period of a year prior to the death of an employe caused thereby, evidence that deceased had never been notified of the obstruction was admissible, since the existence of the obstruction for so long a time charged defendant company with notice thereof, and with the duty of informing its employes of the danger therefrom.   *p. 205.*

SAME.—*Death of Employe Caused by Overhanging Limbs of Tree.—Evidence.*—In an action against a railroad company for the death of an employe who was knocked from defendant's train by the overhanging limbs of a tree, one of defendant's witnesses testified on cross-examination that after the accident he picked up some small branches underneath the overhanging limbs, and that his reason for picking them up was that he did not know but that they might be needed as evidence.   *Held,* that it was not reversible error to permit the witness, on further cross-examination, to be asked whether at the time he did not think there might be some connection between the broken branches and the injuries to decedent.   *pp. 205, 206.*

From Wayne Circuit Court; *H. C. Fox,* Judge.

Action by Clara Parish, administratrix, against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company for damages. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*John L. Rupe,* for appellant.

*J. F. Robbins, R. A. Jackson* and *H. C. Starr,* for appellee.

ROBINSON, P. J.—Appellee sued for damages for the alleged negligent killing of her intestate. Demurrers to each of the two paragraphs of complaint overruled. Verdict in appellee's favor. Motion for a new trial overruled. Judgment on the verdict. The errors assigned and argued question the rulings on the demurrers and the denial of a new trial.

The averments of the first paragraph upon the questions of negligence and freedom from contributory negligence are, substantially, that on the 21st day of July, 1898, decedent was a freight conductor, and as such it was necessary, in the proper management of trains, to go on the tops of freight cars and walk over the same while in motion; that at that time, and for some time prior thereto, there was a certain tree standing and growing along appellant's right of way, and near to the tracks, the limbs and branches of which were hung and extended over and above the tracks to such height and in such manner and position as that the same would come in contact with, and form a dangerous obstruction to, any one standing or walking on or along the tops of freight cars at that point, all of which facts were at all times well known to appellant, "but of which facts, the plaintiff avers, the said John H. Parish never at any time had any notice or knowledge, and of which facts he was at all times wholly ignorant"; that appellant, well knowing the existence of such obstruction, and the nature and dangerous character of the same, at all times, knowingly, carelessly and negligently failed to remove or cause such obstruction to be removed, but knowingly, carelessly, and negligently suffered and permitted the same to remain an obstruction, and carelessly and negligently failed to provide or maintain any apparatus or means whatever in any place to give warning to any trainmen who might be upon the tops of cars of the existence of such obstruction, or of the approach of trains to the same, and at all times carelessly and negligently wholly failed to give to trainmen, by any means

whatever, any notice or knowledge of the existence of such obstruction; that between twelve and one o'clock on the morning of July 21, 1898, decedent was in charge of a freight train as conductor, and, a short time before the train reached the point overhung by the limbs and branches of the tree, it became his duty to go upon the tops of the moving freight cars, and stand and walk over the tops of the same, which he did, and while so doing and while in the exercise of all proper care and diligence, in entire ignorance of the obstruction, and wholly free from fault or negligence, he was suddenly, without warning, brought in contact with the obstruction and thrown to the ground, producing injuries resulting in death. The amended second paragraph differs from the first only in that it is more specifically averred that decedent was ignorant of the obstruction and the danger thereof. But as the averment of the first paragraph upon that point, which is set out above, amounts to an averment that decedent was ignorant of the obstruction and of the danger, the two paragraphs in their essential averments are substantially the same.

The pleading charges that appellant, at the time in question and prior thereto, negligently permitted the branches of a tree to overhang its tracks so as to form a dangerous obstruction to employes while discharging certain duties, and that appellant knew the existence and nature of the obstruction, and its dangerous character, and had never given any of its trainmen any notice of the existence of the obstruction; that the decedent had no notice or knowledge of the existence of the obstruction or of the danger; and that decedent, while in appellant's employ, and in the discharge of his duty as a conductor, and without fault on his part, was struck by the overhanging branches and thrown from the car and killed.

It can not be said that the danger from the branches of a tree, which the company permits to hang over its tracks so low that they may come in contact with employes while en-

gaged in their duties on the tops of its cars, is a danger incident to the service. Nor is it such a danger that the employe would be presumed to know it. It is true, it is not averred how long decedent had been engaged in the service; and, being of mature years, it will be presumed he had the knowledge and skill fitting him for the service. But the demurrer admits that he did not know of the danger; that he did not know of the obstruction. It was not such an open and obvious obstruction that we can say, as matter of law, that the employe, in the discharge of his duty, was bound to see it, and that he was, therefore, chargeable with knowledge of the danger from it. There are cases where it is apparent from the facts averred that the complaining party had an equal opportunity with the employer to know of a defect or obstruction, or where the conclusion is irresistible that he did know of it, in such case it is not sufficient to aver simply that he did not know it. But this is not such a case. "While an employe," said the court in *Consolidated Stone Co.* v. *Summit*, 152 Ind. 297, "assumes the risk from obvious defects or dangers, open to ordinary and careful observation, or such as would be known by the exercise of ordinary care (*Peerless Stone Co.* v. *Wray*, 143 Ind. 574), yet it is only necessary to allege that he did not know of such defect or danger; and such allegation not only repels actual knowledge, but any implied knowledge. *Evansville, etc., R. Co.* v. *Duel*, 134 Ind. 156. To sustain such allegation, however, the evidence must show that the employe not only had no knowledge of the defect, but could not have known the same by the exercise of ordinary care."

Decedent had the right to assume that the company would not permit an obstruction to remain above its tracks which would be dangerous to its employes while operating its trains. If there was such an obstruction, and the company knew it, it was its duty to notify its trainmen of the danger. It was no part of decedent's duty to anticipate such an obstruction. He may have passed it seldom or often, and

yet know nothing of its existence. It was not such an obstruction as he must necessarily see when passing over the road with his train. It was dangerous to an employe only when on top of a car. It does not appear from the pleading that decedent had ever passed over that part of the road before that trip. But even if that did appear, there is nothing in the complaint to show that he must necessarily see the obstruction when passing it, or that any facts existed within his knowledge to warn him of any danger. The demurrers to the complaint were properly overruled. See, *Baltimore, etc., R. Co.* v. *Rowan,* 104 Ind. 88; *Louisville, etc., R. Co.* v. *Wright,* 115 Ind. 378, 7 Am. St. 432; *Pennsylvania Co.* v. *Sears,* 136 Ind. 460.

Appellants road where it crossed the main street of the town ran north and south, and consisted of two tracks, the west track being the main track; and the other, as near the main track as would leave proper clearance, was a switch track used for switching and a passing siding for trains. Six or seven feet east of the switch track, at the southeast corner of the crossing and the street, and on the outer edge of the sidewalk in front of private property, and not upon appellant's right of way or property, stood a tree with a limb about twelve feet from the ground, the branches of which extended out towards the tracks. The jury found that when Parish was injured, and during more than a year prior thereto, the limbs and branches of this tree extended over the switch track, constituting an obstruction dangerous to the lives of employes when on the tops of freight cars, and sufficient in size and strength to push a man off of the top of a car running from three to six miles an hour. There is evidence to sustain these findings. Appellant not only had the right to remove such overhanging limbs, whether the tree stood upon its right of way, or upon the premises of an adjoining landowner, but it was its duty to remove them, if such removal was necessary to provide a reasonably safe place for its employes to work. From the whole record, it is

clear that, as to appellant's negligence, the jury's general verdict in appellee's favor was authorized.    See, *Toledo,* *etc., R. Co.* v. *Loop,* 139 Ind. 542.

The jury answered that decedent was pushed or knocked off the car by the limbs of the tree, but it is argued that the evidence leaves it a matter of speculation as to how he came to fall, and that there is no evidence that he was at the time in the exercise of due care.    It is well settled that the absence of contributory negligence, as any other disputed fact, may be established by circumstantial evidence.    Charles E. Hebbler testified that he was front brakeman on south-bound train No. 76;. that decedent was conductor on north-bound train No. 87; that witness' train was standing on the main track, waiting for decedent's train to pull in on the switch, and, as it came in on the switch, he says, "Why, I was standing on top, and I could see the motion of a man's arms and see the limbs moving, and then I seen the lantern fall, and then I rushed over to the engine and told the fireman about it, and they were running so very slow that he didn't think anybody went off the top; he told me, he said he didn't think there was any one fell off; and about eight or ten more car lengths passed by and we seen a light in between two cars, and then we thought probably that it was just his lantern fell off, and we didn't pay any more attention to it until we got to Hamilton."    Upon cross-examination he testified that he was on top of a car eight or ten car lengths north of the street crossing, and that decedent's train was moving at the rate of four or five miles an hour, that he saw the motion of the limb work up and down, and could see the limbs of the tree moving, and saw a lantern fall.    Q.    "You didn't see a man did you?"    Ans.    "Why I was *too far off,* I couldn't see the man, no sir."    Q.    "Well as a matter of fact, you didn't see any man, did you?"    A. "No, sir."    Amanda White testified that on the night in question, on account of sickness, she was sitting at an open window which overlooked the railroad crossing eighty or a

hundred feet away, and saw a man fall from a north-bound
freight train on the switch; that he was past the tree when
he fell; that when he fell he was north of the tree and south
of the trolley wire, (in the middle of Main street).   She
did not see him on top of the car, but he had just left the
car and was falling when she saw him.   On cross-examina-
tion she testified that he seemed to drop as though he had no
life when he fell; heard him strike the ground; that she
did not see the man at the time he passed the tree; did not
see any motion of the limbs; that she could see the maple
tree plainly from where she was.   Robert D. White, hus-
band of Amanda, testified that, being awakened by his wife
he went to the crossing and saw the man, unconscious, lying
on his right side, eight or nine feet east of the switch track,
and twenty-five or twenty-eight feet north of the tree; also
a broken lantern lying near.   Joseph H. Brown testified
that he was rear brakeman on decedent's train; that he and
decedent were in the caboose together, and that, when the
train had pulled partly in, decedent took his lantern and
went out; that the train remained standing several minutes,
and when it pulled in on the siding witness left the caboose,
closed the switch, returned to the caboose, and when they
had passed over Main street crossing and stopped, he saw
the conductor's body lying in the road.   There was also evi-
dence that two or three small branches of the tree about a
foot and a half to two feet long and about as thick as a lead
pencil, freshly broken, were found on the ground near de-
cedent, and between him and his lantern, and the next day
a space about two feet or more was discovered in the limbs
that overhung the track, where the twigs and limbs had been
freshly broken off.

The record shows that decedent was a sober and careful
man, and a competent and experienced railroad conductor;
that he had been in appellant's employ as conductor eight or
nine years; that when injured he had with him his lantern,
and was in a proper place, and in the performance of work

in the line of his duty; that he had never at any time been warned in any way of the existence of the danger. He was seen to take his lantern and leave the caboose. A witness saw the motion of a man's arms, and saw the branches of the tree moving, and saw the lantern fall. Another witness saw his body falling from top of the car. His body was found, taking into consideration the height of the car and the speed of the train, at a place consistent with the theory that the branches caused him to fall. Taking all the facts and circumstances proved, and the inferences that may be fairly drawn from these facts and circumstances, it can not be said there was nothing upon which the jury could base the answer to an interrogatory that decedent was pushed or knocked off the train by the limbs of the tree.

Nor can it be said that there is nothing in the record from which the jury could say that decedent was in the exercise of due care. It is argued that the nature of the obstruction was such that the decedent, in the exercise of ordinary care, must necessarily have seen it; that it was open and obvious; and that decedent, in exercising the care devolved upon him by law, must have known of its existence. The jury found as a fact, in answer to interrogatories, that the branches were not at all times an open, apparent, and obvious obstruction to a person passing on the switch on the outside of a train, and that a person on top of a freight train running from three to six miles an hour and on the lookout for obstructions would not at all times see the tree and limbs. The jury also found that decedent did not know, and that while acting as conductor he did not have a reasonable opportunity to learn, of the dangerous character of the obstruction, and that in passing over the switch on the inside of a moving caboose he did not have a reasonable opportunity to discover such dangerous character.

It appears from the evidence that at the time of the injury decedent was engaged in running his train north, in on the switch. An extra train was immediately ahead of his

Pittsburgh, etc., R. Co. *v.* Parish.

on the switch, and still another train on the main track going south. Decedent's train stood partly on the switch, but with the rear end on the main track. While these two trains were thus standing on the switch and main track the south bound train passed the north end of the switch and stopped, and the extra passed out onto the main line. Decedent then moved his train north to get the rear of the train off of the main line so the south bound train could pass, and while so engaged the accident happened. Decedent's attention would naturally be occupied with the movements of these trains. There was nothing to suggest to him that he was in any danger from any overhead obstruction. He had the right to rely upon the appellant's performance of its duty to remove such obstruction, or give him notice of its existence. The jury found that there were electric lights near this crossing, but that they did not light the crossing well, and so that persons and objects might be readily distinguished at and immediately about the crossing, and that a person passing over the crossing at night could not from all points readily see and distinguish the tree and limbs, and that the view of the tree to a person passing it on the outside of a train on either the main or side track was obstructed by smoke, shadows and insufficient light, to a considerable extent. He had the right to give his whole attention to the duty he was performing. He was in a place where his duty to appellant required him to be. He was ignorant of any danger. He did not know of any obstruction. Rules of appellant, copies of which were furnished all conductors, made it the duty of appellant's supervisor to note anything liable to obstruct the track and have it removed. Not only should all the facts and circumstances surrounding him at the time be taken into consideration, but it is proper to consider, also, on the question whether he exercised care, that he was sober and industrious, and a young man in good health, providing for his family, an experienced conductor earning from $80 to $100 per

month, and that in a person so situated it is to be inferred that the instinct of self preservation was as strong as in other men. Slight positive testimony, whether circumstantial or otherwise, when taken in connection with the instincts of self preservation, and the desire to avoid pain or injury to oneself, may be sufficient to support a conclusion that one who suffers injury did not help to bring it upon himself. See, *Allan* v. *Willard*, 57 Pa. St. 374; *Chicago, etc., R. Co.* v. *Gunderson*, 174 Ill. 495, 51 N. E. 708; *Hopkinson* v. *Knapp*, 92 Iowa 328, 60 N. W. 653; *Way* v. *Illinois, etc., R. Co.*, 40 Iowa 341; *Greenleaf* v. *Illinois, etc., R. Co.*, 29 Iowa 14, 4 Am. Rep. 181; *Gay* v. *Winter*, 34 Cal. 153; *Johnson* v. *Hudson River R. Co.*, 20 N. Y. 65, 75 Am. Dec. 375; *Teipel* v. *Hilsendegen*, 44 Mich. 461, 7 N. W. 82; *Evansville St. R. Co.* v. *Gentry*, 147 Ind. 408, 37 L. R. A. 378, 62 Am. St. 421; *Cincinnati, etc., R. Co.* v. *McMullen*, 117 Ind. 439, 10 Am. St. 67; *Illinois, etc., R. Co.* v. *Nowicki*, 148 Ill. 29, 35 N. E. 358; *Citizens St. R. Co.* v. *Ballard*, 22 Ind. App. 151.

Complaint is made of certain instructions given, and the argument against them is that they incorrectly state the law as to assumed risk. The questions presented by appellant's counsel upon the instructions given, and the court's refusal to give some of the instructions requested, rest upon the doctrine of assumed risk. The obstruction here complained of is not one that was erected and maintained and necessary for use in the operation of the road. It is a familiar rule that by the contract of service an employe assumes such risks as are naturally incident to the particular service. And he assumes the risk of injury from such dangerous obstructions as are known to him in fact, or which ordinary care on his part would discover. *Pennsylvania Co.* v. *Ebaugh*, 152 Ind. 531; *Wabash R. Co.* v. *Ray*, 152 Ind. 392. And he assumes the risk of injury from dangerous obstructions, which, by reason of their open and obvious character in and of themselves, give him notice. The jury

answered that decedent did not know of the obstruction, nor did he have reasonable opportunity to know of it. The theory of the trial court was that the nature of this obstruction was such that the jury should determine from all the facts and circumstances proved whether decedent had actual notice or knowledge of its existence, or had reasonable opportunity to know of it, and that, if he did not, the risk was not assumed. Upon this theory the court correctly instructed the jury. Appellant's counsel seem to proceed upon the theory that the obstruction was of such a character that an employe was necessarily bound to know of its existence, and that the answers of the jury upon the question of notice or knowledge must be ignored. But whether such an obstruction as that in question is an open and obvious defect, and the danger therefrom obvious and apparent, were questions of fact for the jury. Decedent had been in the employ of appellant as conductor over this line of road from 1891 to September, 1895, and from that time until May 31, 1898, he had made no trip over the line. The record does not show that during the time prior to September, 1895, he knew of, or had an opportunity to know of, this obstruction, if in fact it then existed. Moreover, the question here would be whether decedent knew of the obstruction when injured, rather than as to his knowledge at some prior time. See, *City of Bluffton* v. *McAfee*, 23 Ind. App. 112.

The jury answered that from May 31, to July 21, 1898, decedent made forty-six trips, and that during this time he passed over the side-track seven or more times. They also answered that these branches, in so far as they constituted any obstruction to the side-track, were not at all times an open, apparent, and obvious obstruction to a person passing the same on the side-track on the outside of a train. The overhanging limbs constituted an obstruction over the side-track only. The branches were above the top of an ordinary box freight car. Decedent may have passed over the side-track a number of times in the performance of his

duties as a conductor, and yet never have seen the overhanging branches. And he may have seen the tree and its branches while passing along on the main track, and yet the danger from them would not necessarily have been apparent. It was not an obstruction always dangerous to employes passing over the switch, but was dangerous only to a person on top of a car; and, unless the tree and its branches were seen with reference to a car, their dangerous character might not be apparent. So that knowledge of the existence of the tree and its branches, and knowledge of the danger from them, are not necessarily one and the same. It was admitted that he had been given no actual notice of the obstruction. There is nothing in the record to show that he was ever at any time in a position where he must necessarily have seen the obstruction. See, *Fonda* v. *St. Paul City R. Co.*, 71 Minn. 438, 74 N. W. 166, 70 Am. St. 341. When all the evidence in the case is considered, it must be concluded that whether decedent assumed the risk, or was charged with notice of the danger to which he was exposed, was a question for the jury. See, *Kelleher* v. *Milwaukee, etc., R. Co.*, 80 Wis. 584, 50 N. W. 942; *Sweet* v. *Michigan Cent. R. Co.*, 87 Mich. 559, 49 N. W. 882; *George* v. *Clark*, 85 Fed. 608, 29 C. C. A. 374; *Pidcock* v. *Union Pac. R. Co.*, 5 Utah 612, 19 Pac. 191, 1 L. R. A. 131; *St. Louis, etc., R. Co.* v. *Irwin*, 37 Kan. 701, 16 Pac. 146, 1 Am. St. 266; *Johnston* v. *Oregon, etc., R. Co.*, 23 Oregon 94, 31 Pac. 283; *Boss* v. *Northern Pac. R. Co.*, 2 N. Dak. 128, 49 N. W. 655, 33 Am. St. 756; *Hulehan* v. *Green Bay, etc., R. Co.*, 68 Wis. 520, 32 N. W. 529; *Fitzgerald* v. *New York, etc., R. Co.*, 34 N. Y. Supp. 824; *Keist* v. *Chicago, etc., R. Co.*, 110 Iowa 32, 81 N. W. 181.

The sixth instruction does not purport to state to the jury all the material facts they are required to determine, but expressly states that they "will be required to determine as material questions in this case the following facts, among others," and proceeds to state certain facts. This instruc-

tion can not be considered erroneous, on the ground that it omits the element of decedent's duty respecting open and obvious obstructions, when taken in connection with other instructions given. The court instructed the jury upon the employe's duty to exercise reasonable and ordinary care and diligence for his own safety, and that if he received information or had notice of such conditions and dangers, and he afterwards, with knowledge thereof, voluntarily remained and continued in the service, and was injured, he would be held to have assumed the risk of such conditions and dangers, and could not recover.

There is no error in the court's refusal to instruct the jury if the evidence showed that decedent had equal opportunity with appellant to see and know of the existence of the overhanging limbs, and their character and extent, he would, by remaining in the service, assume the risk and dangers arising therefrom. The jury answered that, at the time of and prior to the injury, decedent did not have opportunity equal with appellant's officers and agents to know of the existence and location of the tree and its branches, and that he did not know of, nor did he have reasonable opportunity to know of, their dangerous character. The obstruction was one arising out of appellant's negligence, and equal opportunity to know of the existence of the obstruction, and equal opportunity to know of its dangerous character are not one and the same thing. Moreover, it can not be said that any duty rested upon decedent to make any examination of appellant's road for such an obstruction as that here in question. But such a duty did rest upon appellant. "The true rule," say Shearman & Redfield on the Law of Negligence, (5th ed.) §217, "as to 'equal knowledge' is that, when the means of knowledge and the *duty to use those means* are equal, between master and servant, and neither uses those means, both are equally at fault." And in *Louisville, etc., R. Co.* v. *Berry*, 2 Ind. App. 427, it is said: "The general statement is made in some of the books and de-

cisions of courts that the law will not permit a servant to recover from his master for an injury resulting on account of a dangerous defect in the service, if he had the same means of discovering the defect as the master had. This principle can apply only where the servant is under the same obligation as the master to know the condition of the service." See, also, *Salem Stone, etc., Co. v. Griffin*, 139 Ind. 141.

A witness who had testified that he had known decedent a number of years, had frequently seen him at work as a railroad man and had worked with him, saw him almost every day during the last years of his life, was asked to state "what sort of a man he was, as to whether or not he was a careful man in and about his work as a railroad man, or otherwise." Objection was made that the question called for an opinion; that the evidence was not competent to prove freedom from contributory fault, and was not proper under any issues in the case. It is, no doubt, true that such evidence would not be competent to excuse negligence; but, although the cases do not agree, it would be competent upon the measure of damages. The loss from the death of a careful, experienced, railroad man would be greater than from that of one who was careless and inexperienced. The law estimates the value of a human life as best it can, and in doing so it will take into consideration, among other things, the habits of the individual as to sobriety and industry, and such qualities as affect his capacity to earn money. The evidence in question was not improper to go to the jury on the question of damages. Upon a proper request, a court should limit by an instruction such evidence to the particular question upon which it is competent. See, *Board, etc., v. Legg*, 110 Ind. 479; *Hogue v. Chicago, etc., R. Co.*, 32 Fed. 365; *Missouri Pac. R. Co. v. Moffat*, 60 Kan. 113, 55 Pac. 837, 72 Am. St. 343; *Wells v. Denver, etc., R. Co.*, 7 Utah 488, 27 Pac. 688; *Chicago, etc., R. Co. v. Clark*, 108 Ill. 113.

It was not error to permit appellant's supervisor to testify that appellant had not erected any warners or tell-tales on either side of this tree. The complaint contains such an averment. Although no legal obligation rested upon appellant to erect and maintain such warners, and the failure to erect and maintain them would not be negligence, yet such evidence would be competent as tending to establish the fact that decedent did not know of the obstruction, and had not been in any way warned by appellant of its existence or of the danger. Nor was there any error in permitting appellant's train master and chief train dispatcher to testify that decedent was not notified of the existence of this obstruction. The obstruction had existed for a sufficient length of time that appellant was bound to know of it. The complaint charged that appellant had not, by any means, notified decedent of the danger. The danger here in question was not such as is ordinarily and usually incident to the business of railroading, and knowing of its existence, it was appellant's duty to inform its employes; the danger not being of such character that the employes were bound to take notice of it. *Louisville, etc., R. Co.* v. *Wright*, 115 Ind. 378, 7 Am. St. 432.

Upon cross-examination of one of appellant's witnesses, he testified that after the injury, and on the same night, he picked up some small branches of a tree underneath the overhanging limbs. It was not reversible error to permit a question to be asked the witness on the further cross-examination, whether at the time he did not think there might be some connection between the broken branches and the injuries to decedent. What the witness thought could not be material as a substantive fact, nor would any such statement by him bind appellant. He had already testified without objection that he "didn't know but what they might be needed as evidence." As this was cross-examination of an employe of appellant called by it as a witness, appellee was not bound by the answer as made, but might make further

inquiry to determine whether the witness had fully given the true reason for his action. But even if it should be admitted that the evidence was not material, it can not be said that it was necessarily prejudicial or harmful to appellant.

Judgment affirmed.